[No. 8876–9–I.   Division One.   March 16, 1981.]

*In the Matter of the Petition of* PUGET
SOUND POWER & LIGHT COMPANY.

*Wilson & Reardon, Harry C. Wilson,* and *Douglass A. North,* for appellant.

*Perkins, Coie & Stone* and *Charles C. Gordon,* for respondent.

DURHAM, J.—Puget Sound Power & Light Company brought this action to condemn a 40–foot–wide and 256–

foot–long easement over the property of Kenneth M. and Carolyn L. Jauch for the purpose of constructing a high–voltage transmission line.

The Ames Lake area, located east of Redmond, Washington, requires a greater supply of electrical power from its supplier, Tanner Electric Cooperative (Tanner), than it is currently receiving. Tanner does not generate its own power and its supply of power is provided from the Bonneville Power Administration via lines owned and maintained by Puget Sound Power & Light Company (PPL). In order for PPL to meet Tanner's increased requirement, a new 115,000–volt transmission line must replace the existing 12,500–volt line running along 238th Avenue Northeast in Redmond.

During 1978, PPL decided to run the new 115,000–volt transmission line across the property of Kenneth M. and Carolyn L. Jauch (Jauches). The determination was based on engineering practices, safety factors and costs. On January 2, 1979, the Jauches wrote to PPL asking that the new power line be put on the other side of 238th Avenue Northeast, where the present line is located. In July of 1979, a PPL representative visited the Jauches to discuss acquiring easement rights to bring the power line over the Jauches' property. After discussing the matter, the Jauches decided they did not want to sell easement rights to PPL. PPL gave the Jauches notice on October 4, 1979, that they would commence condemnation proceedings if necessary, and the condemnation proceedings were initiated on December 12, 1979.

PPL's petition sought a nonexclusive easement 40 feet wide and 256 feet in length across the Jauches' property. PPL's present intention is to place one pole 75 to 80 feet tall on the Jauches' property, but the easement also allows for PPL to place underground conduits, cables, vaults, manholes, switches, and semiburied or ground mounted facilities such as pads, transformers and switches.

A trial was held on the issue of public use and necessity, and the trial judge inspected both the site proposed by

PPL and the alternatives preferred by the Jauches. The court's oral opinion was given on May 1, 1980, and the Jauches moved for reconsideration of this decision on May 2, 1980. This motion was denied on May 28, 1980, and a decree of public use and necessity was entered. It is from this decree that the Jauches appeal.

The Jauches' primary contention is that the trial court erred in applying the arbitrary and capricious standard of review to the eminent domain actions of a nongovernmental entity.

It is conceded that PPL is a public service corporation vested with the power of eminent domain. RCW 80.32.060. For this power to be validly exercised, however, the requirements of RCW 8.20 must be met. In particular, we are concerned here with RCW 8.20.070,[1] which describes the trial court's role in reviewing corporate condemnation actions.

In adjudicating public use and necessity under this statute, a trial court must make three separate, but interrelated, findings: (1) the use in question is really a public use; (2) public interests require it; and, (3) the property to be acquired is necessary to facilitate the public use. *Des Moines v. Hemenway*, 73 Wn.2d 130, 437 P.2d 171

---

[1] "Adjudication of public use or private way of necessity. At the time and place appointed for hearing said petition, or to which the same may have been adjourned, if the court or judge thereof shall have satisfactory proof that all parties interested in the land, real estate, premises, or other property described in said petition, have been duly served with said notice as above prescribed, and shall be further satisfied by competent proof that the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use, or is for a private use for a private way of necessity, and that the public interest requires the prosecution of such enterprise, or the private use is for a private way of necessity, and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the purposes of such enterprise, the court or judge thereof may make an order, to be recorded in the minutes of said court, directing that a jury be summoned, or called, in the manner provided by law, to ascertain the compensation which shall be made for the land, real estate, premises or other property sought to be appropriated, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law."

(1968); *State ex rel. Sternoff v. Superior Court,* 52 Wn.2d 282, 325 P.2d 300 (1958); *State v. Bank of Cal.,* 5 Wn. App. 861, 491 P.2d 697 (1971); *King County v. Farr,* 7 Wn. App. 600, 501 P.2d 612 (1972). Whether a contemplated use is really "public" is solely a judicial question. *State v. Bank of Cal., supra.* On the other hand, the "necessity" of the contemplated acquisition is left to the judgment of the condemnor; a declaration of necessity by the appropriate decision–making body will, by the courts, be deemed conclusive in the absence of proof of actual fraud or such arbitrary and capricious conduct as would amount to constructive fraud.[2] *Tacoma v. Welcker,* 65 Wn.2d 677, 399 P.2d 330 (1965).

This deference to the condemnor's decision regarding necessity has its root in the concept of eminent domain itself. The power to assert eminent domain rights is an attribute of state sovereignty—exercised through the legislature—and is thus subject to judicial review only to determine whether the State exceeded its lawful authority. 1 J. Sackman, *Nichols on Eminent Domain* § 3.1[2] (rev. 3d ed. 1980).

An implicit element of this constrained judicial review, however, is the existence of a legislative–type decision on the proposed condemnation action. While limited judicial review as evidenced by the "arbitrary and capricious" standard has been used by courts considering the eminent domain activities of public service corporations, *State ex rel. Clear Lake Logging R.R. Co. v. Superior Court,* 83 Wash. 445, 145 P. 421 (1915); *State ex rel. Grays Harbor Logging Co. v. Superior Court,* 82 Wash. 503, 144 P. 722 (1914); *State ex rel. St. Paul & Tacoma Lumber Co. v. Dawson,* 25 Wn.2d 499, 171 P.2d 189 (1946), these cases do

---

[2]The term "arbitrary and capricious" is generally understood to mean that "judicial review of administrative or legislative action will be restricted to the precise record before the agency whose action is challenged. The court's role is to measure the action of the agency and determine whether it is arbitrary or capricious . . ." *Cammack v. Port Angeles,* 15 Wn. App. 188, 194–95, 548 P.2d 571 (1976). *See also* RCW 34.04.130(6)(f).

not address the issue raised by this appeal: namely, the fundamental dissimilarities between the legislative processes of the State or its agencies and those of a private corporation.

A governmental body exercising the power of eminent domain is required, either by the nature of the legislative process or by express statutory directive,[3] to make its decision in a public forum where objections by affected citizens may be heard. The superior court adjudicating the public use and necessity of a governmental entity's eminent domain decision therefore has the benefit of both agency expertise and public discussion. Thus, the arbitrary and capricious standard of review is justifiable.

Conversely, when a public service corporation exercises its eminent domain powers, it is not required to hold any hearings, or to provide any means for public involvement prior to the commencement of judicial proceedings. Thus, the basis for the "arbitrary and capricious" standard—the existence of a legislative process—is not present. "[D]ue process requires that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest . . . Further, the 'opportunity' for a hearing must be granted 'at a meaningful time and in a meaningful manner.'" *Everett v. Slade,* 83 Wn.2d 80, 83, 515 P.2d 1295 (1973); *Reilly v. State,* 18 Wn. App. 245, 566 P.2d 1283 (1977).

The decision of PPL, a nongovernmental agency, to exercise its power of eminent domain was made privately. There can be no meaningful review of its action when judicial scrutiny is limited by the arbitrary and capricious standard. Clothing the processes of such a private corporation with the mantle of the legislative process, without the

---

[3]For example, when the State decides to initiate a taking for a limited access highway, the abutting property owner is entitled to notice of a public hearing. *See* RCW 47.52.133. When a city desires to condemn property, it must do so by ordinance, thus involving hearings. Likewise, when a county condemns under RCW 36.85.010, it must act through its board, RCW 36.88.310; again, a public hearing is contemplated.

semblance of notice and opportunity to be heard, does not conform to our concept of due process. *See Everett v. Slade, supra.*

Accordingly, the matter is remanded to the trial court to enter findings of fact on whether PPL has demonstrated public use and necessity by a preponderance of the evidence.

RINGOLD, A.C.J., and CALLOW, J., concur.

Reconsideration denied April 7, 1981.

Review denied by Supreme Court June 25, 1981.