**Cathey CONROY, Appellant,**

v.

**Peter N. MANOS and Management Systems Corporation, Appellees.**

No. 05–83–00316–CV.

Court of Appeals of Texas, Dallas.

Sept. 18, 1984.

Rehearing Denied Oct. 19, 1984.

GUILLOT, Justice.

Appellee's motion for rehearing is granted. Our prior opinion is withdrawn, and the following is now our opinion.

This is an appeal from the granting of a motion for directed verdict in a suit for an alleged conversion and for the alleged denial of Cathey Conroy's constitutional rights. For the reasons below, we affirm.

In her first two points of error, Conroy contends that the evidence either established conversion as a matter of law or was sufficient for the special issues to be submitted to the jury. The evidence showed that Conroy failed to pay Peter Manos rent in October, 1981, and that Manos then filed a forcible detainer suit. It further showed that the constable put a notice to vacate on Conroy's door and that her property would be removed anytime after 10:00 a.m. She was able to avoid the eviction by persuading the justice of the peace to rule that her pet deposit could be applied to October's rent with her paying the difference. In November, Conroy again failed to pay rent, allowed a default judgment to be rendered against her for possession of the premises, and failed to vacate the premises with her belongings. Manos obtained a writ of restitution, and the constables, with two of Manos' employees assisting them, executed the writ on December 3, 1981, by placing Conroy's possessions on the sidewalk.

■ Conroy does not claim that the justice court had no authority to issue the writ or that the constables had no authority to execute it. She contends, rather, that the writ does not call for the constable to remove her belongings. We disagree. The writ calls for the constable to enter the building and that "peaceable possession thereof [be] restore[d] to the said plaintiff...." To put the landlord in possession the officer must remove the tenant's effects. *Ferguson v. Barnes*, 274 S.W. 277 (Tex.Civ.App.—San Antonio 1925, writ dism'd). Thus, the constable was acting within the law, and Manos' employees committed no conversion in assisting him. We overrule Conroy's first two points.

Bruce W. Bowman, Jr., Vial, Hamilton, Koch, Tubb & Knox, Dallas, for appellant.

Frank J. Betancourt, DeHay & Blanchard, Dallas, for appellees.

■ In three points of error, Conroy contends that there was inadequate notice in the writ of restitution that her belongings would be placed outside of her apartment if she failed to vacate and thus her due process rights under U.S. CONST. amend. XIV were violated. She contends, therefore, that the court erred in directing a verdict because the violation of her constitutional right established as a matter of law, or alternatively, was sufficient to raise a fact issue that she had a cause of action under 42 U.S.C.A. § 1983 (West 1981). While property rights are protected under the statute, *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Hohensee v. Grier*, 373 F.Supp. 1358 (M.D.Penn.1974), *aff'd*, 524 F.2d 1403 (3rd Cir.1975), *cert. denied*, 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976), as appellant concedes, suit may be brought if a private person engages with state officials in *prohibited* conduct. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As pointed out earlier, the writ commanded the constable to restore peaceable possession to Manos, and that result could only be reached by dispossessing the apartment of Conroy's possessions. Furthermore, the forcible detainer suit informed Conroy of Manos' demand for "possession of the premises." Thus the dispossession was not in itself wrongful.

■ Moreover, dispossession of the apartment did not in itself deprive her of her property. Conroy had notice that her right to occupy the apartment had terminated and that she might be dispossessed at any time. She was free to make any arrangements necessary for its protection before or after execution of the writ. We find no direct basis in the Rules of Civil Procedure, as does one of the dissents, for holding that she had the right as a matter of due process to be notified of the time and manner of executing the writ. So far as this record shows, she could have obtained that information by timely inquiring. She had full opportunity to appear and defend the suit, but failed to do so. She could have avoided the loss by her own efforts. Therefore, she cannot complain that she was deprived of her property under color of legal process. We hold that either the forcible detainer suit papers or the writ of restitution constituted due process notice to Conroy that she had to either vacate the premises or her possessions would be removed. There being no constitutional violation, there can be no violation of Conroy's rights under 42 U.S.C.A. § 1983. We overrule her third, fourth, and fifth points of error.

■ In her sixth point of error, Conroy contends that the court erred in granting a directed verdict because the evidence shows that her security deposit was not returned. The record shows that Manos was reasonable in not returning the deposit since rent was due and unpaid at the time Conroy surrendered possession of the premises and there was no controversy over the amount of rentals due and unpaid. Conroy did not comply with the requirements of former TEX.REV.CIV.STAT. ANN. art. 5236e, §§ 3(b), (4)(c),[1] much less with the requirements of the lease. We overrule her sixth point.

■ In her last point of error, Conroy contends that, if she abandoned the property, Manos had the duty to protect it. In the first place, the evidence does not show that she had abandoned the property. In this respect, the testimony from Conroy was that she was living in her apartment most of the month of November, that she was boxing up the property to move to another apartment, and that she came to the apartment to pick up her possessions. Under these facts, Conroy cannot claim to have abandoned the property. *Cf. Fender v. Schaded*, 420 S.W.2d 468, 473 (Tex.Civ. App.—Tyler 1967, writ ref'd n.r.e.). In the

---

1. Act of Sept. 1, 1973, ch. 433, 1973 Tex.Gen. Laws 1182, 1183, *repealed by* Act of Jan. 1, 1984, ch. 576, § 6, 1983 Tex.Gen.Laws 3729; now enacted at TEX.PROP.CODE ANN. §§ 92.109, 92.-104 (Vernon Supp.Pamp.1984).

second place, we hold that Manos, the landlord, had no duty to protect or to store Conroy's property. When Conroy was served with process of notice to vacate the premises, that notice required not only that Conroy remove her person but also that she remove her personal property. When she failed to remove her property as required under the forcible detainer suit, she placed her property at risk. Indeed, Conroy, rather than Manos, had a duty to protect her property, in which duty she failed. We overrule Conroy's last point.

Affirmed.

Costs taxed against Conroy.

STEPHENS, Justice, dissenting.

This case was first heard by a panel composed of Justices Stephens, Vance, and Allen. It was unanimously determined that the case must be reversed and remanded to the trial court for a new trial. On motion for rehearing, the case was considered En Banc, and a majority of the En Banc court voted to affirm the judgment of the trial court, resulting in the withdrawal of the original opinion, and the substitution of the present opinion authored by Justice Guillot, writing for the majority. The original panel remains unpersuaded that the original opinion of the panel was incorrect, and accordingly, we dissent.

This dissent, as was the original opinion, is directed to appellant's points of error in which she contends that the evidence established as a matter of law that her rights had been violated pursuant to 42 U.S.C.A. § 1983; or that there was sufficient evidence of a violation of 42 U.S.C.A. § 1983 to submit the case to the jury; and that the trial court erred in directing a verdict against appellant because if the Writ of Restitution allows the removal of appellant's property without regard to due care, then such process violates appellant's rights pursuant to the Fourteenth Amendment to the Constitution of the United States.

*Facts*

Conroy was a tenant in an apartment which was owned by Manos. The evidence shows that Conroy defaulted in the payment of rent in October 1981, resulting in Manos bringing a forcible entry and detainer suit against her which she successfully defended. Introduced into evidence as Plaintiff's Exhibit # 10 was a notice posted on appellant's apartment door, in this first suit:

FINAL NOTICE

This is final notice for you to vacate at once the premises you now occupy. (Your property will be removed anytime after 10:00 A.M.)
CAUSE NO. (Blank)
JESSE R. DAWSON
Constable, Precinct No. 8
Dallas County, Texas

By (Blank)
Deputy

The following month, in November 1981, Conroy again defaulted in payment of her rent, and again Manos brought a forcible entry and detainer suit against her, in a different Justice of the Peace Court. Her failure to answer the suit, which was shown to have been served upon her, resulted in the court rendering a default judgment against her. Following the default judgment, Manos timely requested a writ of restitution which was issued, and service of the writ was performed by two deputy constables. When the constables arrived at the apartment to serve the writ, appellant was not present. Manos' apartment manager furnished two employees to the constables who directed the two employees to remove appellant's property from the apartment and place it in a public parkway area. The record is void of any evidence that appellees exercised any other dominion over the property at any time.

Conroy argues that removal of her personal property, as was here done, violated her rights under 42 U.S.C.A. § 1983, as well as due process under the United States Constitution. Under these points,

Conroy contends that the evidence established as a matter of law that her section 1983 rights were violated, or alternatively that there was sufficient evidence to require a jury finding on that issue. The third point contends that if a writ of restitution allows the removal of her property without regard to due care, then due process under the United States Constitution is violated.

### Due Process As Guaranteed By The Fourteenth Amendment To The Constitution of the United States.

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides that: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ."

Conroy contends that she was deprived of her property in violation of the Fourteenth Amendment by the procedures employed in this case. We agree.

The Fourteenth Amendment affords a cause of action to individuals who are wronged by state actors. By its enactment of section 1983 to the Civil Rights Act, Congress provided a cause of action against citizens who "under color of" any state statute deprive any citizen of any rights, privileges, or immunities secured to those individuals by the Constitution. 42 U.S.C.A. § 1983. This enactment extended the cause of action provided against state actors under the Fourteenth Amendment to causes of action against individuals guilty of similar conduct acting "under color of" state law.

In *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the United States Supreme Court clearly enunciated the meaning of "under color of." The Court, after citing numerous previous cases, reiterated their consistent ruling that: "[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." The facts in *Lugar* were that a creditor brought an action against a debtor in the State of Virginia for recovery of a debt, and prior to judgment, in accordance with state law, filed an *ex-parte* petition alleging a belief that the debtor was disposing of or might dispose of his property in order to defeat his creditors. Acting upon the petition, a clerk of the state court issued a writ of attachment, which was then executed by the county sheriff, who left the property in the possession of the debtor. Later the attachment was dismissed because the petitioner had failed to establish the statutory grounds for attachment alleged in the petition. The debtor then brought an action under section 1983 against the creditor alleging that the creditor acted jointly with the state to deprive him of his property without due process of law. The Supreme Court held that the Virginia statute was a product of the state; that by invoking its provisions for relief, the citizen was held to be a participant with the state and thus the citizen was "a state actor."

In *Lugar* the rule was firmly established that a plaintiff in a section 1983 action must meet a two-fold test: first, it must be shown that a constitutionally guaranteed right was violated resulting from a source in state authority; and second, it must be shown under the facts of the case that the private parties may be appropriately characterized as "state actors."

Analyzing the facts of our case, we have no difficulty in determining that Conroy was deprived of her personal property by the joint actions of appellees and the state. Appellees first sought relief under the state laws pertaining to forcible detainer; ·relief having been granted, appellee's apartment manager furnished two employees, who, acting upon instructions of state officers, removed Conroy's personal property from protected premises, and placed them on an unprotected public parkway, where they were removed by thieves and vandals. The officers testified that if appellees had not furnished employees to

physically remove the property, they would have left it in the apartment. Their testimony was that their responsibility was only to work the writ and to see that everything was done correctly, and that they only supervised the removal of the property. They further stated that on some occasions the landlord would store the property, with their approval, yet their usual and customary procedure was to have the property placed on the street, as was done here. After the removal of the property to the parkway, the officers left the premises before any of the property had been taken. Appellee's apartment manager testified that she had authorized the maintenance men to assist the state officers in the removal of the property; that she had viewed the property being placed on the public parkway; that she had taken no action to protect the property; and that she had watched while people picked up the property and removed it. The placement of the property on an unprotected public way, where it was stolen by thieves, and destroyed by vandals was an act of appellee "under color of law," which resulted in depriving appellant of her property.

The next question is whether appellant was deprived of her property without due process of law. We conclude that she was so deprived. The Texas law of forcible detainer provides that the successful party to such a suit is entitled to possession of the premises. *Martinez v. Beasley*, 572 S.W.2d 83 (Tex.Civ.App.—Corpus Christi 1978, no writ). The writ of restitution, issued on application of appellees, commands the state officer to:

> enter upon said tract or lot of land and into the building thereon situated, if any, and peaceable possession thereof restore to the said Plaintiff and of the goods, chattels, lands and tenements of the said Defendant you cause to be made the sum of 51.50 Dollars, costs of suit in this behalf expended, and your fees for executing this Writ.

Due process has been held to be a relative concept whose requirements must be determined on a case-by-case basis; procedural due process requirements include notice reasonably calculated to apprise a party of pending proceedings affecting him, and an opportunity to be heard at a reasonable time and in an effective manner. *Reilly v. State*, 566 P.2d 1283, 18 Wash. App. 245 (1977). Due process requires that an individual be given an opportunity for a hearing before he is deprived of any significant property interest; further, opportunity for such a hearing must be granted at a meaningful time and in a meaningful manner. *Petition of Puget Sound Power & Light Company*, 28 Wash.App. 615, 625 P.2d 723 (1981).

Time and again the Supreme Court of the United States has dealt with the questions of what constitutes "the right to be heard" within the meaning of procedural due process. *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Sniadach v. Family Finance Corporation of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), Mr. Justice Douglas, referring to *Mullane*, stated:

> In the latter case we said that the right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce, or contest.

We recognize that appellant was served with process, and chose not to appear and contest. Usually, service in the first instance is sufficient to satisfy the notion of due process. However, in this case we must look to see what notice was in fact given appellant. She was served with a form entitled Forcible Detainer in the Justice Court, styled Euphrates Apts. v. Cathy Conroy & All Occupants. This form commanded her to appear before the Justice of the Peace on a day certain to answer to the complaint of the plaintiff, which stated:

> The nature of the Plaintiff's demand being suit upon possession of premises known as House No. 4301 Street Hart-

ford Apt. No. 122 in said precinct for possession and for costs.

As we read the citation, no notice was given Conroy that her failure to appear and contest the suit, would result in the loss of her personal belongings. Nor was any notice given in the writ of restitution, that her property would be removed and placed at peril. We are unwilling to read into the notices given appellant any notice that she was about to be deprived of her personal belongings.

The majority states in its opinion that the "constable put a notice to vacate on Conroy's door and that her property would be removed anytime after 10:00 a.m." This notice is shown in its entirety in the dissent, and is in fact a notice issued under the first forcible entry and detainer suit. It is unsigned, undated, and no cause number is shown. It can hardly be said that this notice is meaningful as to time or manner as dictated by *Puget Sound*. Furthermore it was posted pursuant to the first case, and not the one of which complaint is made.

The majority also states "that it has long been held that to put the landlord in possession the officer must remove the tenant's effects," citing *Ferguson v. Barnes*, 274 S.W. 277 (Tex.Civ.App.—San Antonio 1925, writ dism'd) for its authority. Since Ferguson was handed down, it has never been cited for any proposition of law, much less the long standing law for which it is now cited. In *Ferguson*, the statement on which the majority relies was dictum, and was not material to the decision of the case. Furthermore, the writ of error notation "dismissed," was used in 1925 to show lack of jurisdiction in the Supreme Court to consider the application, defective application, application filed too late, subject matter of controversy had ceased to exist, judgment of C.C.A. not one which "practically settles the case, and included cases otherwise within the jurisdiction of the Supreme Court where the error committed, if any, was not "of such importance to the jurisprudence of the State as in the opinion of the Supreme Court required correction."

42 Texas Law Review Ass'n, Texas Rules of Form (5th ed. 1983) (and cases cited therein). *Ferguson*, under these facts could hardly be considered authority for long standing law.

The majority also concludes that no prohibited conduct occurred. We believe this holding to be directly opposite to the ruling in *Lugar*.

The dissenting justices conclude that appellee was a state actor, acting under color of state law, and that those acts resulted in deprivation of appellant's personal property without due process. Accordingly, we would hold that appellant was entitled to prosecute her cause of action under U.S. C.A. § 1983, and would reverse and remand the cause of action to the trial court.

Joined herein by VANCE and ALLEN, JJ.

WHITHAM, Justice, dissenting.

I respectfully dissent. I write to express my disagreement with the majority's disposition of the constitutional questions presented. Conroy alleges a cause of action under 42 U.S.C.A. § 1983 (West 1981) against private citizens for a deprivation of fourteenth amendment procedural due process. Thus, the questions are whether constitutionally protected action occured and, if so, whether Manos and Management Systems are liable for such action under 42 U.S.C.A. § 1983.

*Constitutionally Protected Action*

The writ of restitution commands the constable to:

[E]nter upon said tract or lot of land and into the building thereon situated, if any, and peaceable possession thereof restore to the said Plaintiff and of the goods, chattels, lands and tenants of the said Defendant you cause to be made the sum of 51.50 Dollars, costs of suit in this behalf expended, and your fees for executing this Writ.

In executing the writ, the constable removed Conroy's personal property from the apartment and placed it upon a public

street right of way. Conroy's property was then stolen while the apartment manager employed by Manos and Management Systems watched. Thus, rather than obey the command to "cause to be made the sum of $51.50, costs of suit in this behalf expended, and your fees for executing this Writ," the constable seized and abandoned Conroy's property to her damage.

TEX.R.CIV.P. 748 provides that if judgment be for the landlord, the justice of the peace shall award the landlord a writ of restitution. Rule 748 is silent as to how the writ shall be executed. The Rules of Civil Procedure, however, are not silent as to how the writ of restitution shall be executed should the writ issue following appeal to the county court pursuant to TEX. R.CIV.P. 749. In that situation, TEX.R. CIV.P. 755 provides:

> *The writ of restitution,* or execution, or both, shall be issued by the clerk of the county court according to the judgment rendered, *and the same shall be executed by the sheriff or constable, as in other cases;* and such writ of restitution shall not be suspended or superseded in any case by appeal from such final judgment in the county court. (emphasis added).

To execute the writ of restitution "as in other cases" can only have reference to execution of writs of execution enforcing judgments. TEX.R.CIV.P. 621–656 contain the provisions for execution of writs of execution. Specifically, rules 649 and 650 provide for notice and sale of personal property. Rule 650 reads:

> Previous notice of the time and place of the sale of any personal property levied on under execution shall be given by posting notice thereof for ten days successively immediately prior to the day of sale at the courthouse door of any county and at the place where the sale is to be made.

Rule 649 states in pertinent part:

> Personal property levied on under execution shall be offered for sale on the premises where it is taken in execution, or at the courthouse door of the county, or at some other place if, owing to the nature of the property, it is more convenient to exhibit it to purchasers at such place. Personal property susceptible of being exhibited shall not be sold unless the same be present and subject to the view of those attending the sale.

Thus, it is obvious that the rules intend writs of restitution issued by both a justice of the peace and the clerk of the county court be executed in the manner of execution of writs of execution.

Abandoning personal property upon the public way is a far cry from the required posted notice of sale and offer for sale required by the procedures of this State. Thus, public sale following posted notice is the lawful procedure by which the constable was required to carry out the command to "cause to be made the sum of $51.50, costs of suit in this behalf expended, and your fees for executing this writ." In the present case, however, rather than take Conroy's property into his safe custody and thereafter conduct a proper public sale according to the rules in order to obey the writs' command, the constable disobeyed the court's command and failed to carry out his duties as directed by the writ. Therefore, the constable's actions constituted an abuse of process in execution of the writ. Procedural due process requires the government to adhere to its own rules. *See* United States *ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954). Accordingly, Conroy was deprived of her fourteenth amendment right of procedural due process in the present case.

Moreover, I cannot agree with the majority that the due process clause of the fourteenth amendment permits the State of Texas to confiscate a person's property by the procedure followed in the present case. It is one thing for the State to lawfully execute the writ of restitution by the required public sale following posted notice. In my view, service of process upon Conroy in the forceable detainer suit and the opportunity thus afforded Conroy to be heard would meet due process requirements for

the taking of her property by the required public sale following posted notice. It is quite another matter, however, for the State to seize and then abandon Conroy's property on the street to be stolen. Conroy had no notice that she would be deprived of her property in this manner. Conroy was afforded no hearing on the taking of her property in this manner. The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). That a tenant might default in a forceable entry and detainer suit expecting ultimately to receive the net proceeds of the sale of his possessions is not consent that his property be placed at the street unprotected. In my view, given the encroachment on Conroy's property in the present case, *Fuentes* requires notice and an opportunity to be heard *before* seizure and abandonment by the State. Consequently, Conroy was deprived of her fourteenth amendment right of procedural due process in the present case separate and apart from the failure of government to adhere to its own rules.

A longstanding tenant eviction practice in this State stands constitutionally challenged in the present case. The practice cannot meet the challenge. I would hold that the practice deprives tenants of their property without due process of law in violation of the fourteenth amendment under the facts of the present case.

### Liability of Manos and Management Systems as Private Citizens

The writ of restitution was issued and executed on application of Manos and Management Systems. The constable used Manos and Management Systems' employee labor in executing the writ. Manos and Management Systems authorized use of its employees in executing the writ. In my view, had Manos and Management Systems participation ended once they invoked state legal procedures in applying for the writ, they would not be state actors and there-

fore not liable under 42 U.S.C.A. § 1983. Manos and Management Systems, however, did more than merely invoke state legal procedures. They jointly participated with state officers in executing the writ of restitution. Private persons, jointly engaged with state officials in prohibited action, are acting "under color" of law for purposes of 42 U.S.C.A. § 1983. To act "under color" of law does not require that the accused be an officer of the state. It is enough that he is a willful participant in joint activity with the state or its agents. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). A private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the fourteenth amendment. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982). Thus, Manos and Management Systems, together with the constable, were state actors for purposes of the fourteenth amendment. Manos and Management Systems acted jointly with the State to deprive Conroy of her property without due process of law in violation of the Constitution of the United States. I would hold, therefore, that Conroy has a cause of action against Manos and Management Systems, as private citizens, under 42 U.S.C.A. § 1983 for this deprivation of her property without due process of law in violation of the fourteenth amendment. *Lugar*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482.

Congress enacted § 1983 and its predecessor, § 2 of the Civil Rights Act of 1866, 14 Stat. 27, to provide an independent avenue for protection of federal constitutional rights. The remedy was considered necessary because state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights. *Pulliam v. Allen*, — U.S. —, 104 S.Ct. 1970, 1980, 80 L.Ed.2d 565 (1984). Thus, 42 U.S.C.A. § 1983 provides Conroy an independent avenue for protection of her federal constitu-

tional rights which were violated when the power of one of this State's courts was used to seize, and to thereafter abandon, Conroy's property upon a public parkway to Conroy's damage.

In conclusion, I cannot agree with the majority's disregard of property rights. Particularly, in light of the protection afforded property rights by the fourteenth amendment. As put by the Supreme Court in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 544, 552, 92 S.Ct. 1113, 1118, 1122, 31 L.Ed.2d 424 (1972).

It cannot be doubted that among the civil rights intended to be protected from discriminatory state action by the Fourteenth Amendment are the rights to acquire, enjoy, own and dispose of property. Equality in the enjoyment of property rights was regarded by the framers of that Amendment as an essential precondition to the realization of other basic civil rights and liberties which the Amendment was intended to guarantee.

\* \* \* \* \* \*

The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a "personal" right, whether the "property" in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized.

Under my approach, property rights of both landlord and tenant are protected. Proper execution of the writ of restitution returns to the landlord his property and protects the tenant's property interests in that the officer's sale obtains payment on costs and fees due from the tenant and restores to the tenant the balance, if any, out of the proceeds of sale. Thus, the tenant has the value of his property less his debts. Indeed, should the tenant be the successful bidder he has the return of his property. To the contrary, the majority protects only the landlord's property rights and approves distribution of the tenant's property to the human vultures gathered along the street awaiting the constable's departure.

For the above reasons, I would reverse the trial court's take nothing judgment and remand to the trial court.

STOREY and STEWART, JJ., join in this opinion.