**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CITY OF SAMMAMISH, a Washington municipal corporation, | DIVISION ONE |
| Appellant, | No. 83886-5-I |
| v. | PUBLISHED OPINION |
| JOHN TITCOMB, JR. and LINDE R. BEHRINGER, husband and wife, and the marital community comprised thereof; and KING COUNTY, | |
| Respondents. | |

DWYER, J. — In determining whether a municipality possesses the requisite authority to condemn private property, our focus is the purpose of the condemnation as articulated by the relevant legislative body. When such authority exists, we must determine whether the condemnation is for a public use and whether the property condemned is necessary to accomplish that use. While the former is a judicial question, the latter is largely a question for the legislative body seeking condemnation.

Here, the city council of the City of Sammamish enacted Ordinance No. O2021-526 (the Ordinance) authorizing the condemnation of property rights in the water flowing from George Davis Creek, which runs through the property and beneath the home of John Titcomb and Linde Behringer. The Ordinance

authorized condemnation for the purposes of reducing and eliminating storm drainage conveyance system capacity issues, improving traffic safety, and providing flood protection, as well as supporting kokanee salmon recovery by removing barriers to fish passage. Following the enactment of the Ordinance, the City of Sammamish (the City) filed in the superior court a petition in eminent domain and a motion for an order adjudicating public use and necessity. Titcomb and Behringer opposed the City's motion. The superior court denied the motion.

Because the City has the statutory authority to condemn private property for the purposes set forth in the Ordinance, and because the City has demonstrated both public use and necessity, we reverse the superior court's order denying the City's motion and dismissing its eminent domain action.

I

In July 2018, the City initiated the George Davis Creek Fish Passage Project (the Project) "to replace storm drainage infrastructure and to eliminate existing barriers to fish passage." George Davis Creek (the Creek), located in Sammamish, runs downhill to East Lake Sammamish Parkway (ELSP), a main arterial that parallels the waterfront homes along Lake Sammamish. The last downstream portion of the Creek runs through the property of Titcomb and Behringer before flowing into the lake. The Creek flows beneath Titcomb and Behringer's residence, where they have constructed a daylit fish ladder integrated into the home's foundation.

Christopher Coenen, senior stormwater program manager for the City, described the impetus for and purposes of the Project. According to Coenen, the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

need to improve the drainage capacity of the Creek's stormwater infrastructure "goes back decades." In the 1990s, King County installed a bypass system at the Creek's juncture with ELSP, which was intended to "capture overflow water for occasional storm-related flooding." However, the current system is inadequate to convey stormwater "without significant maintenance to remove accumulated sediment within the drain system." Moreover, according to Coenen, the "culverts, pipes, and other drainage infrastructure within the Creek prevent Lake Sammamish Kokanee salmon from reaching upstream spawning grounds." Thus, Coenen indicated, the Project is intended "to reduce or eliminate storm drainage conveyance system capacity issues, improve traffic safety of adjacent roadways by reducing hazardous flooding conditions, and provide greater flood protection. Likewise, the Project would remove barriers to fish passage."

In late 2018, City staff conducted a project analysis to compare four alternatives for the Project. Alternative 1 involved the replacement of multiple culverts beneath ELSP and other roadways and the construction of an open channel through the Titcomb and Behringer property, which would maintain the open channel beneath and downstream of their residence. Alternative 2 would not have impacted the Titcomb and Behringer property, but would have involved the replacement of culverts and the construction of a series of open channel stream sections on other property. Alternative 3 involved the replacement of multiple culverts beneath ELSP and other roadways, construction of an open channel through the Titcomb and Behringer property, reconstruction of an open channel beneath the residence, and reconstruction of the existing channel

between the residence and Lake Sammamish.  Finally, Alternative 4 involved the replacement of the same culverts, acquisition of the private property adjacent to the Titcomb and Behringer property (the Sigmar property), and construction of the stream through that City-owned property and into Lake Sammamish.  After considering these project alternatives, City staff and the project consultant team indicated that Alternatives 3 and 4 best met the City's goals for implementing the Project.

The project alternatives analysis was presented to the Sammamish City Council (the SCC) at its March 2019 meeting.  The SCC thereafter directed City staff to pursue Alternative 4, involving acquisition of the Sigmar property and rerouting of the Creek through that property.  The SCC concluded that the proposed stream relocation "is necessary due to constraints with the existing stream course through the Titcomb-Behringer property."  An alternative involving modification of the stream through the Titcomb and Behringer property, the SCC concluded, "would be unsuccessful because it would fail to meet critical project requirements," including state fish passage rules, the capacity "to convey the 100-year flow event," and acquisition of the requisite federal permitting.

In March 2020, the City purchased the Sigmar property.  The City attorney advised the SCC that "the project's relocation of the stream's water flow may constitute a taking of the Titcomb-Behringer's property rights associated with the value of the stream."  Thus, City staff and the City attorney "pursued a course to provide just compensation" to Titcomb and Behringer.  To that end, City staff engaged in extensive efforts to reach a settlement agreement.  When, over the

4

course of 12 months, negotiations had not been productive, the City concluded

that further discussions were unlikely to result in such an agreement.

Accordingly, the Ordinance was proposed to authorize the initiation of

condemnation proceedings.

On March 2, 2021, the SCC held a public hearing at which members of

the public, including Titcomb, testified against the condemnation. At the hearing,

the objectives of the Project were presented, including the need to reduce the

risk of flooding, improve the capacity of a critical public facility, reduce

maintenance demands, and, additionally, support kokanee salmon populations.

According to the summary of the Project, it would address the "clear public need"

of the inadequacy of the current storm drain system, as well as supporting

kokanee salmon, and "can only be completed if the stream is moved."

The SCC voted 6-1 to adopt the Ordinance authorizing exercise of its

power of eminent domain in order to acquire the Titcomb and Behringer property

for the Project. The Ordinance is entitled:

> AN ORDINANCE OF THE CITY OF SAMMAMISH,
> WASHINGTON, DECLARING PUBLIC USE AND NECESSITY
> FOR THE ACQUISITION OF PROPERTY INTERESTS FOR THE
> GEORGE DAVIS CREEK FISH PASSAGE PROJECT;
> AUTHORIZING USE OF CONDEMNATION PURSUANT TO
> CHAPTER 8.12 RCW AS REQUIRED FOR THE GEORGE DAVIS
> CREEK FISH PASSAGE PROJECT; AUTHORIZING PAYMENT
> FOR THE ACQUISITION OF PROPERTY INTERESTS FOR THE
> GEORGE DAVIS CREEK FISH PASSAGE PROJECT FROM THE
> CITY'S STORMWATER ENTERPRISE FUND AND OTHERWISE
> FROM THE GENERAL FUNDS OF THE CITY; PROVIDING FOR
> SEVERABILITY; AND ESTABLISHING AN EFFECTIVE DATE

The Ordinance recognizes the goal, set forth in the City's comprehensive plan, "to maintain and protect surface water resources, and to encourage restoration of such resources," as well as "to acquire property to provide public control to the water's edge of State regulated shorelines." It further recognizes our state legislature's enactment of legislation "establish[ing] a fish barrier removal board to identify and prioritize the removal of fish barriers from rivers and streams."

The Ordinance references that the "culverts, pipes and other drainage infrastructure within George Davis Creek are not adequate to convey the two-year storm event, which results in periodic flooding, additional facility maintenance, and reduced traffic safety on adjacent roadways," and that the Project "will reduce or eliminate storm drainage conveyance system capacity issues, improve traffic safety of adjacent roadways by reducing hazardous flooding conditions, and provide greater flood protection." The Ordinance additionally notes the "significant barriers to fish passage" where the Creek flows through the Titcomb and Behringer property. It indicates that the Project "will support kokanee salmon recovery by providing barrier-free passage for fish migrating to spawning grounds, and improve in-stream habitat and passage for juvenile fish returning to Lake Sammamish." In adopting the Ordinance, the SCC determined that acquisition of the Titcomb and Behringer property "is for a public use, in the public interest, and is necessary for that public use."

On July 21, 2021, the City filed in the superior court a petition in eminent domain "condemning all property rights in the water flowing from George Davis Creek necessary for the George Davis Creek Fish Passage Project." On

December 10, 2021, the City filed a motion for an order adjudicating public use and necessity. The City therein asserted that it is authorized by statute to condemn the Titcomb and Behringer property for stormwater facilities, and that such condemnation constitutes a public use and is necessary to accomplish that use. Titcomb and Behringer opposed the motion, contending that the City does not have statutory authority to condemn private land for fish passage purposes.

On February 14, 2022, the superior court denied the City's motion for an order adjudicating public use and necessity and dismissed the City's condemnation action. The City thereafter filed a motion for reconsideration, which the superior court denied. On March 14, 2022, Titcomb and Behringer filed a motion requesting attorney fees and costs pursuant to RCW 8.25.075(1)(a). The superior court granted the motion but reduced the amount of the requested award.

The City appeals.

## II

The City contends that the superior court erred by dismissing its condemnation action. According to the City, it is statutorily authorized to condemn the Titcomb and Behringer property for stormwater facilities purposes pursuant to RCW 8.12.030. Moreover, the City asserts, the condemnation is both for a public use and necessary to accomplish that use. We agree.

## A

The power of eminent domain is an inherent power of the state that may be delegated to its political subdivisions, including cities or counties. Cent. Puget

No. 83886-5-I/8

Sound Reg'l Transit Auth. v. WR-SRI 120th N. LLC, 191 Wn.2d 223, 233, 422

P.3d 891 (2018) (WR-SRI). However, "[a] political subdivision's authority to

condemn property extends 'only so far as statutorily authorized.'" WR-SRI, 191

Wn.2d at 233 (quoting Pub. Util. Dist. No. 1 of Okanogan County v. State, 182

Wn.2d 519, 534, 342 P.3d 308 (2015)). Thus, "the scope of the eminent domain

authority of a governmental unit is a matter of statutory interpretation," and

specific rules guide our interpretation of statutes conferring such authority. WR-

SRI, 191 Wn.2d at 233-234. The power to condemn "must be conferred in

express terms or necessarily implied." In re Petition of City of Seattle, 96 Wn.2d

616, 629, 638 P.2d 549 (1981). However, "[a]lthough a legislative grant of such

power to a municipality is to be strictly construed, it is not to be construed so

strictly as to defeat the evident purpose of the grant." City of Tacoma v. Welcker,

65 Wn.2d 677, 683, 399 P.2d 330 (1965); see also WR-SRI, 191 Wn.2d at 235.

It is well established that municipalities "have clear statutory authority to

condemn property for roadways and for storm water control facilities." Cowlitz

County v. Martin, 142 Wn. App. 860, 867, 177 P.3d 102 (2008). See also City of

Bellevue v. Painter, 58 Wn. App. 839, 842, 795 P.2d 174 (1990) (recognizing

statutory authority for "condemnation for drains and sewers or any other public

use within or without the limits of a city"). Indeed, our legislature has expressly

delegated such authority:

> Every city and town . . . within the state of Washington, is hereby
> authorized and empowered to condemn land and property . . . [for]
> culverts, drains, ditches, . . . and to condemn land and other
> property and damage the same for such and for any other public

8

use after just compensation having been first made or paid into court for the owner in the manner prescribed by this chapter.

RCW 8.12.030.

Here, the parties do not dispute that the City has statutory authority to condemn private property for stormwater facilities purposes. See Br. of Resp't at 21 ("Respondents do not dispute that cities have statutory authority to condemn property for stormwater purposes."). Indeed, such a position would be contrary to the express language of RCW 8.12.030. Instead, Titcomb and Behringer assert, as they did in the superior court, that the City lacks statutory authority to condemn their property because the Project is "a fish passage project." Br. of Resp't at 16. We disagree.

Whether a municipality possesses the requisite authority to condemn private property is determined based on the purpose of the condemnation as articulated by the relevant legislative body. In the Ordinance, the SCC clearly articulated purposes consistent with the statutory grant of authority set forth in RCW 8.12.030. The Ordinance states that the current infrastructure is "not adequate to convey the two-year storm event," resulting in "periodic flooding, additional facility maintenance, and reduced traffic safety on adjacent roadways." It provides that the Project will address these issues, "reduc[ing] or eliminat[ing] storm drainage conveyance system capacity issues, improv[ing] traffic safety of adjacent roadways by reducing hazardous flooding conditions, and provid[ing] greater flood protection." These are precisely the purposes for which RCW 8.12.030 empowers municipalities to condemn private property. See, e.g., Cowlitz County, 142 Wn. App. at 867; City of Bellevue, 58 Wn. App. at 842. That

9

No. 83886-5-I/10

the Project additionally provides fish passage benefits does not divest the City of its authority, conferred by our legislature in RCW 8.12.030, to condemn property for stormwater facilities.[1]

Titcomb and Behringer nevertheless assert that the City is precluded from condemning their property because the City has received funding pursuant to the "Salmon Recovery Act," chapter 77.85 RCW, to implement some part of the Project. The Salmon Recovery Act was enacted by our legislature "in an attempt to improve salmonid fish runs throughout the state." Cowlitz County, 142 Wn. App. at 865; RCW 77.85.005. The act allows counties, cities, and tribal governments to apply for state funds to repair and improve salmonid fish runs after designating the repair or improvement in a "habitat project list." RCW 77.85.050, .150, .170. As relevant here, the act provides that "[n]o project included on a habitat project list shall be considered mandatory in nature and no private landowner may by forced or coerced into participation in any respect." RCW 77.85.050(1)(a). Titcomb and Behringer assert that, because the City has received grant funding pursuant to the Salmon Recovery Act for a certain portion of the Project, their property may not be condemned for any part of the Project.

---

[1] Indeed, pursuant to regulations promulgated by the Washington Department of Fish and Wildlife, any water crossing structures over fish-bearing waters, including culverts, must be designed "to allow fish to move freely through them at all flows when fish are expected to move." WAC 220-660-190(2)(a). For permanent water crossing structures, "[t]he water crossing design must provide unimpeded passage for all species of adult and juvenile fishes." WAC 220-660-190(3)(a). As senior stormwater engineer Coenen explained, "any storm drainage improvements to the drainage system are required by State law to be made fish passable" due to the Creek's status as a state water and a fish-bearing stream. That the City is complying with state regulations regarding fish passage in constructing the Project does not, as Titcomb and Behringer assert, render the Project a "fish passage project[]." Br. of Resp't at 3.

No. 83886-5-I/11

The Ordinance provides, however, that compensation for the property rights acquired through condemnation "will be made from the City's Stormwater Enterprise Fund and otherwise from the general funds of the City." Titcomb and Behringer do not dispute that this is true. Instead, they simply assert that the grant funding received pursuant to the Salmon Recovery Act may not be used for condemnation purposes. That is a separate question, however, from those that we are tasked to decide—whether the City has statutory authority to condemn the property and whether the Project constitutes a public use and the condemnation is necessary for that use. Disputed issues involving the expenditure of funds are not relevant to this appeal. Moreover, there is no indication in the record that the City will use the RCO funds to compensate Titcomb and Behringer. Titcomb and Behringer's assertion that the City is precluded from condemning their property pursuant to the Salmon Recovery Act, chapter 77.85 RCW, is without merit.[2]

Titcomb and Behringer additionally assert that the court's decision in Cowlitz County, 142 Wn. App. 860, demonstrates that the City is without statutory authority for condemnation. That case, however, is inapposite. There, Cowlitz County filed a petition for condemnation to acquire an expanded easement over private property to replace an existing culvert. Cowlitz County,

---

[2] Titcomb and Behringer assign great weight to the name of the Project—the "George Davis Creek Fish Passage Project." However, it is the elected city council to whom our legislature has granted the power of condemnation. Accordingly, it is the Ordinance enacted by the SCC—not the title assigned to the Project by an executive branch employee—that delineates the purpose of that Project. As discussed supra, the Ordinance provides ample evidence that the purposes of the Project fall within the statutory authorization for condemnation set forth in RCW 8.12.030.

11

142 Wn. App. at 862. The county applied for and received a grant from the Salmon Recovery Fund. Cowlitz County, 142 Wn. App. at 862. Its engineering manager "explained that the County wished to replace the Baxter Creek culvert *solely because* it posed an impediment to fish passage." Cowlitz County, 142 Wn. App. at 862 (emphasis added).

The relevant legislative authority, the county board of commissioners, passed a resolution authorizing the county prosecuting attorney to file a petition for condemnation. Cowlitz County, 142 Wn. App. at 862. The resolution stated that the project was "'necessary to remove and replace the existing culvert that has been identified as a barrier to fish passage and the Salmon Recovery Funding Board has awarded a grant for the project.'" Cowlitz County, 142 Wn. App. at 862. In the condemnation petition, the county prosecuting attorney for the first time alleged an additional reason for the condemnation—that the existing culvert was insufficient to handle storm stream flows. Cowlitz County, 142 Wn. App. at 863.

Notwithstanding the county's assertion that the project was also authorized as a county road project, Division Two of this court held that the county did not have authority to condemn the property. Cowlitz County, 142 Wn. App. at 868. Looking to the resolution enacted by the relevant legislative authority, the court determined that "the project had no road improvement purpose independent of the culvert replacement under the Salmon Recovery Act." Cowlitz County, 142 Wn. App. at 867. Moreover, the court held, the county prosecuting attorney—who had, for the first time, articulated inadequacy for

12

storm stream flows as a purpose of the project—lacked the authority to provide a purpose that had not been embraced by the county board of commissioners. Cowlitz County, 142 Wn. App. at 867.

Thus, the court in Cowlitz County held that our legislature had "clearly elected not to grant eminent domain power . . . for projects *solely* funded and regulated by the Salmon Recovery Act." 142 Wn. App. at 866 (emphasis added). The record there did "not reflect that the commissioners considered or were even aware of [the storm stream flow] issue when they made their finding that condemnation was necessary." Cowlitz County, 142 Wn. App. at 865. Rather, the commissioners had "authorized condemnation *solely for the purpose of fish passage* by means of a project funded and regulated by the Salmon Recovery Act." Cowlitz County, 142 Wn. App. at 866 (emphasis added). Indeed, the board of commissioners "made no other finding of necessity" and the record "reflect[ed] no other basis for such a finding." Cowlitz County, 142 Wn. App. at 868.

Here, in contrast, the Ordinance enacted by the SCC clearly articulates that the Project was initiated both "to eliminate existing barriers to fish passage and replace storm drainage infrastructure" in the Creek. Unlike in Cowlitz County, the purposes for which condemnation has been authorized were properly articulated by the legislative authority to whom the power of eminent domain was granted.[3] Because the Project is a stormwater facilities project, the

---

[3] Although it is the purpose articulated by the relevant legislative body that determines whether statutory authority for condemnation exists, we note that the record here, beyond the Ordinance, further supports the City's assertion that a primary purpose of the Project is to improve stormwater facilities.

Consistent with the Ordinance, the presentation regarding the Project made at the public hearing identified reduction of flood risk, improvement of the capacity of the public facility, and

13

City is statutorily authorized to condemn the Titcomb and Behringer property

pursuant to RCW 8.12.030.

B

The City additionally asserts that condemnation of the Titcomb and

Behringer property is for a public use and that acquisition of the property is

necessary to accomplish that use.[4]  We agree.  It is well established that

condemnation by municipalities for stormwater facilities constitutes a public use.

Moreover, given the deference afforded to the legislative authority seeking to

---

reduction of maintenance demands as the public needs supported by the Project, in addition to noting that the Project supports the kokanee salmon.  The presentation listed "storm drainage" as a "project driver."  The SCC's agenda for the meeting indicated that the proposed stream relocation to the Sigmar property is necessary both to comply with fish passage rules and create capacity "to convey the 100-year flow event."

Moreover, senior stormwater engineer Coenen explained that the Project is "fundamentally a stormwater facilities improvement project."  He explained that "[t]he Project—and the City's acquisition of the Behringer property—would fix [the] flooding issues on the ELSP and reduce or eliminate the need for extensive maintenance to ensure the base-level function envisioned by the design."  Senior stormwater engineer Stephanie Sullivan concurred, explaining that the Project "will remove a concrete dam further upstream, increase flow and sediment transport capacity, eliminate the need for a sedimentation pond and diversion system, and reduce or eliminate maintenance for those systems."

[4] Notwithstanding that the motion before the superior court was one requesting the "adjudication of public use and necessity," Titcomb and Behringer provide no argument regarding whether the City has demonstrated that the Project meets those requisite showings.  Instead, they rely solely on their assertion that the City lacks statutory authority for condemnation.  Nevertheless, they contend that, if we conclude that the City has statutory authority to condemn their property, remand for an evidentiary hearing is necessary "to resolve the question of public use and necessity" and to resolve purported factual disputes.  Br. of Resp't at 37-39.

We disagree.  Because the motion before the superior court explicitly sought the adjudication of public use and necessity, this issue has already been litigated.  We decline to provide Titcomb and Behringer a "second bite at the apple."  Moreover, an evidentiary hearing is not necessary for a determination of public use and necessity.  The purported factual disputes raised by Titcomb and Behringer need not be determined to resolve this case.  As discussed infra, once the judicial determination of public use has been made, we owe great deference to the legislative condemning authority regarding whether acquisition of the property is necessary to accomplish that use.  See, e.g., HTK Mgmt., LLC v. Seattle Popular Monorail Auth., 155 Wn.2d 612, 629, 121 P.3d 1166 (2005).  The purported factual disputes raised by Titcomb and Behringer are inconsequential to the resolution of this case.  Accordingly, we deny their request to remand for an evidentiary hearing.

14

condemn property, we conclude that acquisition of the Titcomb and Behringer property is necessary to accomplish the proposed public use.

The power of eminent domain is limited by both the Washington State Constitution and by statute. State ex rel. Wash. State Convention & Trade Ctr. v. Evans, 136 Wn.2d 811, 816-17, 966 P.2d 1252 (1998) (Convention Ctr.). Article I, section 16 prohibits the State from taking private property for private use. Convention Ctr., 136 Wn.2d at 817. Pursuant to RCW 8.04.070, a proposed condemnation must be necessary for the public use. Convention Ctr., 136 Wn.2d at 817.

Washington courts have developed a three-part test to evaluate eminent domain cases. Convention Ctr., 136 Wn.2d at 817. For a condemnation to be lawful, the municipality must demonstrate that "(1) the use is really public, (2) the public interest requires it, and (3) the property appropriated is necessary for that purpose." HTK Mgmt., LLC v. Seattle Popular Monorail Auth., 155 Wn.2d 612, 629, 121 P.3d 1166 (2005). "The latter two findings are generally subsumed under the definition of 'necessity.'" In re Petition of City of Seattle, 104 Wn.2d 621, 623, 707 P.2d 1348 (1985). Whether a proposed condemnation is really for a public use "is solely a judicial question." Welcker, 65 Wn.2d at 684. However, "[w]hether condemnation is necessary is largely a question for the legislative body of the jurisdiction or government agency seeking condemnation." Cent. Puget Sound Reg'l Transit Auth. v. Miller, 156 Wn.2d 403, 411, 128 P.3d 588 (2006). "A declaration of necessity by a proper municipal authority is conclusive

15

in the absence of actual fraud or arbitrary and capricious conduct, as would constitute constructive fraud." HTK Mgmt., 155 Wn.2d at 629.

In enacting RCW 8.12.030, our legislature authorized municipalities to condemn property for the purpose of stormwater facilities. Although the question of public use is a judicial one, decisional authority confirms that condemnation for that purpose constitutes a public use. See, e.g., Cowlitz County, 142 Wn. App. at 867; City of Bellevue, 58 Wn. App. at 842. The Ordinance enacted by the SCC clearly articulates the proposed public use of "reduc[ing] or eliminat[ing] storm drainage conveyance system capacity issues, improv[ing] traffic safety of adjacent roadways by reducing hazardous flooding conditions, and provid[ing] greater flood protection." Accordingly, we conclude that the proposed use of the Project is a public one.

We next turn to the issue of necessity. Because questions concerning whether a property acquisition is necessary to carry out a proposed public use are legislative, we defer to the legislative body seeking condemnation with regard to such determinations. Convention Ctr., 136 Wn.2d at 823. "This deference to the condemnor's decision regarding necessity has its root in the concept of eminent domain itself." In re Petition of Puget Sound Power & Light Co., 28 Wn. App. 615, 618, 625 P.2d 723 (1981). "The power to assert eminent domain rights is an attribute of state sovereignty—exercised through the legislature—and is thus subject to judicial review only to determine whether the State exceeded its lawful authority." Petition of Puget Sound Power & Light Co., 28 Wn. App. at

618. Our Supreme Court has articulated the wisdom of this constrained judicial review:

> Once the purpose for which the lands are taken has been adjudged to be public, the kind and type of roadway, the route to be followed, the design and engineering details become the subject of administrative decision. . . .
>
> Although the courts may well determine from the evidence whether a project is for the public benefit, convenience or necessity, they are not trained or equipped to pick the better route, much less design and engineer the project. Thus, the rule that leaves these decisions to the administrative agencies is a sensible one consistent with the idea that the public's business be carried out with reasonable efficiency and dispatch by those possessing the superior talents to accomplish the public purposes.

Deaconess Hosp. v. Wash. State Highway Comm'n, 66 Wn.2d 378, 405, 403 P.2d 54 (1965).

"When reasonable minds can differ, courts will not disturb the legislative body's decision that necessity exists so long as it was reached 'honestly, fairly, and upon due consideration' of the facts and circumstances." Miller, 156 Wn.2d at 417-18 (quoting Welcker, 65 Wn.2d at 684). Indeed, "[e]ven if the decision was partially motivated by improper considerations, it will not be vacated so long as 'the proposed condemnation demonstrates a genuine need and . . . the condemnor in fact intends to use the property for the avowed purpose.'" Miller, 156 Wn.2d at 418 (second alteration in original) (quoting In re Petition of Port of Grays Harbor, 30 Wn. App. 855, 864, 638 P.2d 633 (1982)). Moreover, "necessary" in the context of condemnation does not mean absolute necessity. Rather,

> [t]he word 'necessary,' as used in connection with eminent domain statutes, means reasonable necessity under the circumstances. State ex rel. Lange v. Superior Court, 61 Wn.2d 153, 377 P.2d 425 (1963). It does not mean immediate, absolute, or indispensable need, but rather considers the right of the public to expect or demand that certain services be provided. Tacoma v. Welcker, 65 Wn.2d 677, 399 P.2d 330 (1965).

City of Des Moines v. Hemenway, 73 Wn.2d 130, 140, 437 P.2d 171 (1968). Accordingly, "[a] legislative body's determination of necessity is conclusive unless there is proof of actual fraud or arbitrary and capricious conduct amounting to constructive fraud or the government fails to abide by the clear dictates of the law." Miller, 156 Wn.2d at 417.

Here, the SCC considered four project alternatives and the analysis set forth by City staff in comparing the relative merits of each. The SCC thereafter concluded that the Project required acquisition of the Titcomb and Behringer property. Relocation of the stream is necessary, as determined by the SCC, "due to constraints with the existing stream course through the Titcomb-Behringer property." The SCC rejected an alternative involving modification of the stream course through that property because "it would fail to meet critical project requirements," including state fish passage rules, the capacity "to convey the 100-year flow event," and the requisite federal permitting. Thus, the Ordinance enacted by the SCC states that condemnation is "necessary for the public use of the construction of the George Davis Creek Fish Passage Project."

The SCC's necessity determination was reached following due consideration of the merits of multiple project alternatives. Titcomb and Behringer nowhere assert that the City acted fraudulently or in an arbitrary and

capricious manner; nor would the record support such an assertion. Our deference to the legislative authority in determining necessity for condemnation is rooted both in our respect for the other branches of government and our recognition of the institutional competence of courts. Miller, 156 Wn.2d at 421. In the absence of proof of fraud or arbitrary and capricious conduct, we will not disturb the SCC's determination that the acquisition of the Titcomb and Behringer property is necessary for the proposed public use. HTK Mgmt., 155 Wn.2d at 629.

The stormwater facilities purpose of the Project, articulated in the Ordinance adopted by the SCC, constitutes a public use. The record demonstrates no fraud or arbitrary and capricious conduct on the part of the City. Extending the deference owed to the SCC, we conclude that acquisition of the Titcomb and Behringer property is necessary to accomplish the proposed public use. Accordingly, we reverse the superior court's order denying the City's motion for an order adjudicating public use and necessity and dismissing the City's petition in eminent domain.

III

The City further asserts that the superior court erred by awarding attorney fees and costs to Titcomb and Behringer. We agree.

The superior court awarded attorney fees and costs to Titcomb and Behringer pursuant to RCW 8.25.075(1)(a). The statute provides that, in a condemnation action, the superior court "shall award the condemnee costs including reasonable attorney fees . . . if . . . [t]here is a final adjudication that the

condemnor cannot acquire the real property by condemnation." RCW 8.25.075(1)(a). Because we conclude that the City has demonstrated the requisite public use and necessity to condemn the Titcomb and Behringer property, the statute does not authorize such an award. Accordingly, we reverse the award of attorney fees and costs awarded by the superior court to Titcomb and Behringer.

Titcomb and Behringer additionally request an award of attorney fees and costs on appeal. Again, the relevant statutory authority, RCW 8.25.075(1)(a), permits such an award only upon a final adjudication that the condemnor cannot acquire the property by condemnation. Thus, for the same reason that we reverse the superior court's award of fees and costs, we decline to grant such an award to Titcomb and Behringer on appeal.

Reversed.

Dwyer, J.

WE CONCUR:

Coburn, J.