Affirmed, in Part, and Reversed and Rendered, in Part, and Opinion filed
October 17, 2002









 

Affirmed, in Part,
and Reversed and Rendered, in Part, and Opinion filed October 17, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00108-CV

____________

 

RHEA H. LAWS, UNION PLANTERS BANK,
N.A., DANNY HILAL, and FIRST CAPITAL INTEREST, L.L.C., Appellants

 

V.

 

JOHNNY BAILEY, CASSANDRA BAILEY, and
RUBY FORD, Appellees

 



 

On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 99-11848

 



 

O P I N I O N

Rhea H. Laws, Union Planters Bank, N.A., Danny Hilal, and
First Capital Interest, L.L.C., appeal the trial court’s judgment in favor of
Johnny Bailey, Cassandra Bailey, and Ruby Ford. 
We affirm, in part, and reverse and render, in part.








                                                             I. 
Background

On February 1, 1994, Johnny Bailey
bought a house located in Missouri City from Power Hill Homes.  Bailey paid off the property prior to 1996,
but he and his wife, Cassandra, did not live in the house because Bailey played
professional football for teams located in other cities.  Instead, Bailey=s mother, Ruby Ford, and his two
brothers lived in the house.  Apparently
Bailey had arranged for his mother to live in the house while he was playing
professional football;  when his football
career ended, Bailey would occupy the house and buy a smaller house for
Ruby.  

Although Ruby was responsible for paying property taxes while
living in the house, she failed to do so. 
On May 6, 1996, various taxing authorities[1]
filed a lawsuit against Bailey for failure to pay property taxes (the “tax suit”).  Bailey, claiming he knew nothing about the
tax suit, never filed an answer.  On
August 9, 1996, Bailey conveyed the property by gift deed to Ruby.  On August 12, 1996, a default judgment was
entered against Bailey in the tax suit. 
On July 1, 1997, Danny Hilal purchased the property at a tax sale for
$77,849.  On July 4, 1997, Bailey,
his wife, and his mother learned of the tax sale when they saw the notice
posted on the front door of the house. 
Bailey then attempted to pay the property taxes at the Tax
Assessor-Collector’s office.  

After obtaining Hilal’s name from
the constable=s office, the Baileys contacted
Hilal.  On July 10, 1997, Bailey assigned
$66,799.21 in excess proceeds to Hilal, who, in turn, agreed to finance the
remaining $30,000 to redeem the property. 
On July 29, 1997, the trial court distributed the excess proceeds to
Hilal.  In August 1997, Ruby moved out of
the house and the Baileys moved in.  The
Baileys claim that after Hilal had received the excess proceeds, he informed
them they were going to have to pay rent. 
Hilal claims he told Bailey about the rent before Bailey assigned the
excess proceeds to him.








            At this point, the
Baileys sought assistance elsewhere.  Bailey’s agent gave him the name Paul
Bellefeuille and his company, Old West Services, Inc.  Bellefeuille met with Johnny and Cassandra
Bailey, and Ruby Ford in October 1997. 
The facts concerning this meeting are disputed.  Bellefeuille asserts Bailey, his wife, and
his mother sold the property to Old West Services for $1,000, signing three
deeds and powers of attorney on October 2, 1997.  Johnny, Cassandra, and Ruby, on the other
hand, claim Bellefeuille presented some documents to them to sign for the
purpose of helping them redeem the property, and maintain they did not sign
anything selling the property to Old West. 
Johnny, Cassandra, and Ruby further allege their signatures on the deeds
and powers of attorney are forgeries. 
Bellefeuille and Old West Services never exercised possession over the
property. 

When Bailey had not redeemed the property, Hilal obtained a
writ of possession on January 15, 1998, from the district clerk pursuant to the
judgment in the tax suit.  On January 23,
1998, the constable executed the writ of possession, and the Baileys were
evicted from the property.  Hilal then
rented the property to other individuals. 


Bellefeuille’s company, Old West Services, received
an unsecured loan in the amount of $30,522.79 from Rhea Laws, which it, in
turn, paid to the Tax Assessor-Collector on July 7, 1998, to redeem the
property.  Old West Services received a
receipt for redemption from the Tax Assessor-Collector’s office.  In October 1998, Old West Services sold the
property  to Laws for $160,000.  Laws borrowed $108,400 from Union Planters
Bank and executed a First Deed of Trust in favor of the bank, and borrowed the
remainder from Old West Services, executing a Second Lien Deed of Trust in
favor of Old West Services.  Also in
October 1998, Hilal conveyed his interest in the property to his company, First
Capital Interest, L.L.C.  








After determining that no one was living in the house, the
Baileys moved back in on January 1, 1999. 
Immediately thereafter, Laws discovered the Baileys were living in the
house, and filed suit to quiet title. 
Bailey, his wife, and his mother filed a bill of review seeking to set
aside the default judgment and the subsequent tax sale on the ground that
Bailey was not served with citation of the tax suit.  

The jury found:  (1)
Bailey was not personally served with citation in the tax suit; (2) Hilal
agreed to finance the redemption of the property in exchange for the assignment
of an interest in the excess proceeds, did not comply with that agreement, and
did not provide anything of value for the assignment; (3) Hilal converted the
Baileys’ personal property when he had them evicted; (4) Bellefeuille and Old
West Services did not provide any money in exchange for the deeds or powers of
attorney dated October 2, 1997; (5) Bellefeuille and Old West Services agreed
to finance the redemption of the property for the benefit of Johnny, Cassandra,
and Ruby, but failed to comply with this agreement; (6) Hilal, Bellefeuille,
and Old West Services committed fraud against Bailey; (7) Bellefeuille and Old
West Services committed fraud against Ruby; (8) the property was the homestead
of Bailey, his wife, and his mother; and (9) Laws had notice that Ruby was
claiming an interest in the property.  








In its judgment, the trial court ordered that title to the
property be vested in Ruby and the following be set aside and vacated as void:
(1) the default judgment entered against Bailey in the tax suit; (2) the
foreclosure of the property pursuant to the default judgment; (3) the tax deed
to Hilal; (4) the warranty deeds and powers of attorney from Johnny, Cassandra,
and Ruby to Old West Services and Bellefeuille; (5) the receipt for redemption
issued to Old West Services; (6) the warranty deed from Old West Services to
Laws; (7) the first lien deed of trust from Laws to Union Planters Bank; (8)
the second lien deed of trust from Laws to Old West Services; and (9) the
warranty deed from Hilal to First Capital Interest.  The trial court awarded $10,000 in damages to
Bailey on his claim against Hilal for rental payments after the eviction;
$25,000 in damages to the Baileys for their conversion claim against Hilal;
$20,000 in exemplary damages to Bailey against Hilal; and $2,891.25, plus
accrued interest on deposit in the office of the District Clerk, to Bailey for
the taxes he paid after the sale of the property.  Finally, the trial court ordered that First
Capital Interest, Laws, Union Planters Bank, and the taxing authorities take
nothing from Johnny, Cassandra, and Ruby.[2]  

                                                           II. 
Hilal=s Issues

                                                                   A.  Standing

In his first issue, Hilal claims Bailey lacked standing to
have the tax sale and constable’s deed set aside because he no longer had any
interest in the property at the time of the July 1, 1997 tax sale due to the
conveyance of the property to Ruby. 
Standing is determined by a two-prong test.  Standing requires that there “‘(a) shall be a
real controversy between the parties, which (b) will be actually determined by
the judicial declaration sought.’”  Texas
Ass=n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)
(quoting Board of Water Eng’rs v. City of San
Antonio, 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)).  In other words, standing concerns whether the
plaintiff is the proper party to bring a cause of action.  Elizondo v. Texas Natural Res.
Conservation Comm=n,
974 S.W.2d 928, 932 (Tex. App.CAustin 1998, no pet.). 
Without the breach of a legal right belonging to the plaintiff, no cause
of action has accrued to the plaintiff’s benefit.  Dennis v. First State Bank of Tex.,
989 S.W.2d 22, 27 (Tex. App.CFort Worth 1998, no pet.). 









“[P]roperty taxes are the personal
obligation of the person who owns or acquires the property on January 1 of the
year for which the tax is imposed.”  Tex. Tax Code Ann. ' 32.07(a) (Vernon 2002).  Thus, a person is not relieved of the
obligation to pay property taxes because he no longer owns the property.  Id. 
Hilal does not dispute that Bailey owned the property during the years
in which delinquent taxes were assessed and for which the taxing authorities
sued.  Conveying the property to Ruby did
not relieve Bailey of his obligation to pay the delinquent property taxes.  A personal judgment was entered against
Bailey for the delinquent taxes.  See
Henson v. City of Corpus Christ, 258 S.W.2d 343, 343B44 (Tex. Civ. App.CSan Antonio 1953, writ ref’d)
(stating personal judgment can be taken against defendant for delinquent taxes
when defendant was shown to be owner of property at time tax was
assessed).  We conclude that because
Bailey was the owner of the property at the time the taxes were assessed and a
personal judgment was taken against him, he had standing to bring the bill of
review seeking to set aside as void the default judgment taken against him and
the resulting tax sale.  Hilal’s first issue is overruled.  

                                                             B.  Lack of Service

In his third issue, Hilal claims the trial court erred in
reversing the default judgment against Bailey and setting aside the tax sale
and constable=s deed for lack of service of
citation because there was no corroborating evidence or testimony that Bailey
had not been properly served.  The return
of service states Bailey was served with the tax suit on July 3, 1996.  A return of service valid on its face raises
a presumption that the statements contained in the return are true.  HCFCO, Inc. v. White, 750 S.W.2d 23,
24 (Tex. App.CWaco 1988, no writ).  It is prima facie evidence of the facts
recited therein.  Primate Constr.,
Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam); G.F.S.
Ventures, Inc. v. Harris, 934 S.W.2d 813, 816 (Tex. App.CHouston [1st Dist.] 1996, no
writ).  The testimony of the moving party
alone without corroborating facts or circumstances will not overcome the
presumption that the officer’s return on the citation was correct.  Ward v. Nava, 488 S.W.2d 736, 738
(Tex. 1972); Martin v. Ventura, 493 S.W.2d 336, 339 (Tex. Civ. App.CTyler 1973, no writ).  The corroborating evidence need not be
direct, but may be wholly circumstantial. 
Cortimiglia v. Miller, 326 S.W.2d 278, 285 (Tex. Civ. App.CHouston 1959, no writ).  The question of lack of service is a question
of fact to be determined by the fact finder. 
Ward, 488 S.W.2d at 738; HCFCO, Inc., 750 S.W.2d at
24.  








Bailey and his wife testified they were not living on the
property at the time of the tax suit. 
Ruby, who was living on the property at the time of the tax suit,
testified she did not receive any papers in connection with the tax suit.  Ruby also explained she did not tell Bailey
she had not paid any property taxes even though she was responsible for them
while she lived there.  Bailey contends
it is reasonable to assume he would pay less than $10,000 in taxes due on a
house he owned free and clear and for which he took less than two years to pay
off.  Bailey also attempted to pay
$2,891.25 in taxes when he learned of the delinquency. This is some evidence of
facts or circumstances corroborating Bailey’s claim that he was not served with
the tax suit.  See Min v. Avila,
991 S.W.2d 495, 503 (Tex. App.CHouston [1st Dist.] 1999, no pet.) (finding testimony that
party had moved two years before service, had discontinued electrical service,
and another person with different name lived at residence on day of attempted
service, among other evidence, established independent facts and circumstances
to corroborate claim of lack of service); Harrison v. Sharpe, 210 S.W.
731, 732B33 (Tex. Civ. App.CAmarillo 1919, writ ref’d) (finding
actions of owners were inconsistent with knowledge of existence of tax suit and
corroborated claim of lack of service); cf. Cortimiglia, 326
S.W.2d at 285B86 (finding testimony of witnesses
did not corroborate claim of no service because such testimony was self-serving
and hearsay). 








            Hilal further complains
Bailey did not present a meritorious defense to the tax suit in the bill of
review proceeding or evidence that he exercised due diligence in paying the
outstanding taxes prior to the entry of the default judgment.  To succeed in a bill of review, the
petitioner must ordinarily show (1) a meritorious claim or defense to the cause
of action supporting the earlier judgment, (2) which he was prevented from
asserting by the fraud, accident, or mistake of the opposing party, or official
mistake, (3) unmixed with any fault or negligence of his own.  Transworld Fin. Servs. Corp. v. Briscoe,
722 S.W.2d 407, 407B08 (Tex. 1987). 
However, when the bill of review seeks to set aside the default judgment
as void for lack of service, the petitioner is not required to prove either a
meritorious defense or fraud, accident, or mistake by the opposing party.  Palomin v. Zarsky Lumber Co., 26
S.W.3d 690, 693 (Tex. App.CCorpus Christi 2000, pet. denied); Axelrod R & D, Inc.
v. Ivy, 839 S.W.2d 126, 128 (Tex. App.CAustin 1992, writ denied).  Therefore, Bailey was not required to prove a
meritorious defense or that he exercised due diligence in the bill of review
proceeding.  Hilal’s
third issue is overruled.  

                                                                 C.  Conversion

In his second issue, Hilal claims the evidence is legally and
factually insufficient to support the jury’s finding on conversion.[3]  When reviewing the legal sufficiency of the
evidence, we consider only the evidence and inferences tending to support the
jury’s finding, disregarding all contrary evidence and inferences.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001).  A “no evidence” point will
be sustained if here is no more than a scintilla of evidence to support the
finding.  Minyard Food Stores, Inc. v.
Goodman, 80 S.W.3d 573, 577 (Tex. 2002). 
In conducting a factual sufficiency review, we must examine the entire
record, considering both the evidence in favor of and contrary to the
challenged finding, and set aside the finding only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 406B07 (Tex. 1998).  








Conversion is the wrongful exercise of dominion and control
over another’s property in denial of or inconsistent with his rights.  Green Int’l, Inc. v. Solis, 951 S.W.2d
384, 391 (Tex. 1997); Waisath v. Lack’s Stores, Inc., 474 S.W.2d 444,
447 (Tex. 1971).  Hilal asserts there was
no conversion of the Baileys’ personal property because the possession of such
property was lawful pursuant to a writ of possession.  There is no unlawful possession where the
property is removed from the premises pursuant to a valid writ.  See, e.g., Campos v. Inv. Mgmt. Props.,
Inc., 917 S.W.2d 351, 354 (Tex. App.CSan Antonio 1996, writ denied)
(finding no wrongful assumption of dominion and control over property where
appellee was legally authorized to remove property from premises and writ of
possession was carried out in compliance with statute); Conroy v. Manos,
679 S.W.2d 124, 125 (Tex. App.CDallas 1984, writ ref’d n.r.e.) (finding no conversion where
writ of restitution provided for constable to enter building and “peaceable
possession thereof [be] restore[d] to plaintiff”); Guyer v. Guyer, 141
S.W.2d 963, 968B69 (Tex. Civ. App.CAmarillo 1940, writ ref’d) (finding
no conversion where sheriff removed property from premises under valid writ of
possession, no other party asserted claim to or ownership of property or
exercised dominion or control over it, and plaintiff made no demand for its
return).  Here, the writ of possession
commands the sheriff or constable to Adeliver to the said DANNY HILAL, the
possession of said property or properties hereinbefore described, as against
the said JOHNNY BAILEY, JR., and all persons claiming under or through HIM
since the institution of this suit.@ 


Bailey and his wife, however, contend Hilal did not evict
them under a valid writ of possession. 
Specifically, they argue Hilal was entitled to only one writ of
possession under the judgment in the tax suit, which was issued and executed
immediately following the purchase of the property at the July 1, 1997 tax
sale, but “[a]fter that, he must go to justice court.”  On July 10, 1997, Bailey assigned the excess
proceeds to Hilal, who, in return, agreed to finance the remaining $30,000 to
redeem the property.  Therefore, the
constable’s return on the first writ of possession, accordingly, states:  “I SPOKE WITH MR. HILAL WHO INFORMED ME THAT
HE HAS WORKED OUT AN AGREEMENT WITH THE OCCUPANT.  THERE IS NO NEED TO CONTINUE ON WITH THE
POSSESSION.”  The Baileys moved into the
house in August 1997.  Hilal had the
Baileys evicted on January 23, 1998, pursuant to a second writ of
possession.  

In
support of their assertion that Hilal was entitled to only one writ of
possession, the Baileys rely on Section 33.51 of the Tax Code, which
states:  








If the court orders the foreclosure of a tax lien and
the sale of real property, the judgment shall provide for the issuance by the
clerk of said court of a writ of possession to the purchaser at the sale
or to the purchaser=s assigns no sooner than 20 days following the date on
which the purchaser=s deed from the sheriff or constable is filed of
record.  

 

Tex. Tax Code Ann. ' 33.51 (Vernon 2002) (emphasis added).  The judgment in the tax suit tracks the
language of section 33.51.[4]  While section 33.51 generally refers to “a
writ of possession,” it contains no language limiting the issuance of only one
writ of possession to the purchaser of the property.  We hold the possession of the Baileys’
personal property was lawful pursuant to the writ of possession.  

The constable took possession of the Baileys= personal property and subsequently
had it placed in storage.  According to
the constable=s return, the Baileys were advised of
where their property was to be stored and how they could reclaim their
property.[5]  Bailey testified he orally complained to the
storage company about his missing property, but he did not complain to the
constable=s office.  There is no evidence Hilal exercised any
dominion or control over the Baileys= personal property or that Hilal was
the party upon whom they were required make a demand for the return of their
property.  We find under these
circumstances there was no conversion of the Baileys’ personal property by
Hilal.  Hilal=s second issue is sustained.








                                                            D.  Excess Proceeds

In his fourth issue, Hilal claims the
trial court erred in awarding damages to Bailey and Ruby against Hilal on the
excess proceeds.  The jury was asked what
sum of money would compensate Bailey and his mother in excess proceeds for Hilal’s breach of the agreement and fraud.  The jury answered $66,799.21 for both Bailey
and Ruby.  The trial court=s judgment, however, did not award
any damages for excess proceeds to Bailey or Ruby.  Hilal’s fourth
issue is overruled.  

                                                                      E.  Fraud

In his fifth issue, Hilal claims the evidence is legally and
factually insufficient to support the jury’s finding that he committed fraud
against Bailey.  The elements of fraud
are: (1) a material misrepresentation, (2) that was false, (3) that was either
known to be false when made or without knowledge of the truth, (4) that was
intended to be acted upon, (5) that was relied upon, and (6) that caused
injury.  Formosa Plastics Corp. U.S.A.
v. Presidio Eng’rs & Contractors, Inc., 960
S.W.2d 41, 47 (Tex. 1998).  

Bailey
alleges Hilal promised to finance the redemption of the property in exchange
for the assignment of the excess proceeds. 
Hilal, however, claims Bailey conceded they never reached an agreement
to finance the redemption of the house. 
Hilal complains in the absence of an agreement regarding the financing
of the remaining $30,000, the jury could not have found that Bailey relied on any
representations made by him.  Bailey testified
Hilal agreed to finance the remaining $30,000 for the redemption of the
property in exchange for the assignment of the excess proceeds.  Bailey also testified he and Hilal never
reached an agreement on terms for financing the remaining $30,000.  The Assignment of Interest in Excess
Proceeds, supports Bailey=s claim that he and Hilal had an agreement.  It states:








Johnny Bailey, Jr. intends to redeem the above
described real property, utilizing in part the excess proceeds currently being
held in the registry of the court. . . . In order to accomplish their
contemplated redemption, Johnny Bailey, Jr. hereby assigns all of his rights,
title and interest in and to the excess proceeds held in the registry of the
court to Danny Hilal, or according to his direction.  

 

The jury found Hilal agreed to finance the redemption of the property in
exchange for an assignment of interest in the excess proceeds, and Hilal
breached that agreement.  The jury was entitled
to resolve in favor of Bailey any contradictions in the testimony
presented.  In any event, Hilal does not
challenge the jury=s finding that there was an agreement or that he breached the
agreement.  

After Bailey had assigned the excess proceeds to Hilal, he
and his wife moved into the house. 
According to Bailey=s testimony, Hilal did not inform him that he was going to
charge rent until after Bailey had assigned the excess proceeds to him.  When Bailey asked Hilal to return the
proceeds, Hilal refused.  After Bailey
failed to redeem the property, Hilal had the Baileys evicted.  The evidence is legally and factually
sufficient to establish reliance. 

Hilal further complains that Bailey, having conveyed the
property to Ruby prior to the tax sale, did not own any interest in the
property and, therefore, the excess proceeds would have belonged to Ruby; thus,
Bailey could not have assigned the excess proceeds to him and could not have
been injured by any alleged misrepresentation. 
The excess proceeds, however, were not the only damages found by the
jury to have been sustained by Bailey as a result of Hilal=s fraud.  The jury also found Bailey sustained $10,000
in damages for rent he paid after Hilal evicted him and Cassandra from the
property.  Hilal=s fifth issue is overruled. 

                                                             III. 
Laws’ Issue

                                                        A.  Bona Fide Purchaser








In his sole issue, Laws claims the evidence is legally and
factually insufficient to support the jury=s finding that he had notice of Ruby=s claim to the property, thereby
precluding his status as a bona fide purchaser of the property.  In response to the bill of review, Laws
asserted he was a bona fide purchaser.  

Status as a bona fide purchaser is an affirmative defense to
a title dispute.  Madison v. Gordon,
39 S.W.3d 604, 606 (Tex. 2001) (per curiam). 
Because Laws challenges a finding on an issue on which he had the burden
of proof, he must demonstrate the evidence conclusively established, as a
matter of law, all vital facts in support of the issue.  Dow Chem. Co. v. Francis, 46 S.W.3d
237, 241 (Tex. 2001) (per curiam).  In
reviewing a matter of law challenge, we must first examine the record for
evidence supporting the jury=s finding, while ignoring all evidence to the contrary.  Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989).  If there is
no evidence to support the fact finder=s answer, we then examine the entire
record to determine if the contrary proposition is established as a matter of
law.  Id. We may sustain the
matter of law challenge only if the contrary position is conclusively
established.  Dow Chem. Co., 46
S.W.3d at 241.  

Because Laws challenges the factual sufficiency of an adverse
finding on which he had the burden of proof, he must demonstrate on appeal that
the adverse finding is against  the great
weight and preponderance of the evidence. 
Id. at 242.  In reviewing a
complaint that the jury’s finding is against the great weight and preponderance
of the evidence, we must examine the entire record to determine if there is
some evidence to support the finding.  Oadra
v. Stegall, 871 S.W.2d 882, 892 (Tex. App.CHouston [14th Dist.] 1994, no
writ).  Only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust, must we sustain the challenge.  Id. 









To qualify as a bona fide purchaser, one must acquire the
property in good faith, for value, and without notice of any third party claim
or interest.  Madison, 39 S.W.3d
at 606.  Notice may be either actual or
constructive.  Id.  A purchaser has actual notice if he has or
should have express knowledge of an adverse right, or if such knowledge should
be implied.  Jones v. Fuller, 856
S.W.2d 597, 603 (Tex. App.CWaco 1993, writ denied); see also City of Richland Hills
v. Bertelsen, 724 S.W.2d 428, 430 (Tex. App.CFort Worth 1987, no writ) (defining
actual notice as “when a person actually knows the facts charged to him, or
should have known them if he had inquired about them, after learning of facts
which put him on inquiry”).[6]  Actual notice is ordinarily a question of
fact, but becomes a question of law where there is no room for reasonable minds
to differ as to the proper conclusion to be drawn from the evidence.  Hicks v. Loveless, 714 S.W.2d 30, 33
(Tex. App.CDallas 1986, writ ref’d n.r.e.).  

Laws contends Ruby presented only circumstantial evidence he
was aware of her claim being asserted against the property, which provides
nothing more than basis for surmise, guess, or conjecture and, therefore, is
not sufficient to support the jury=s finding that he had actual
notice.  Laws claims at the time he made
the $30,522 unsecured loan to Bellefeuille to redeem the property, Bellefeuille
told him the property had been subject to a tax sale, but did not tell him
about Bailey, his wife, and his mother. 
Laws claims he knew  the loan was
going to redeem some property, but it was not until his deposition in this case
that he learned it was this property that had been redeemed.

Bellefeuille
testified as to what he told Laws about the tax sale and the Baileys:

Q.        Well, now, this $30,000 was used to
redeem this property, right?

 

A.        That
is correct.

Q.        And
Rhea later bought this property, right?

A.        That
is correct.

Q.        Now, isn’t it a fact that at the time
Rhea put up the $30,000, you had told him all the details about this property?

 

A.        That’s
correct.

Q.        Okay. 
And you had told him about your arrangements with the Baileys.

 








A.        That’s
correct.

Q.        You told him you had gotten instruments
from them which put you in a position to resell the property.

 

A.        That’s
correct.

Q.        Did you tell him that you had paid
either $1,000 or nothing for the property? 
Did you tell him that?

 

A.        I
told him I paid a thousand for the property.

                                                                   *        *       
*

Q.        When did thisCwhen did you first talk to him about the property?

 

A.        June,
July of >98.

Q.        Okay. 
Now, you testified you told him all the details about the property,
right?

 

A.        That’s
correct.

Q.        Did you tell him why you didn=t have possession of the property?

 

A.        Yes,
sir, I did.

Q.        And
what was that explanation you gave to him?

A.        I
told him it had been foreclosed on at a tax sale.

Q.        He
knew there was a tax sale involved in this.

A.        Yes,
sir.

Q.        Did you tell him who the people were
that lost the property at the tax sale?

 

A.        I imagine I did, you know.  I=m sure I
did.  I don=t
remember verbally saying the name Bailey or Ford but I=m sure I did.  

                                                                   *        *       
*

Q.        Did
[Laws] say anything about the details of the tax suit?

A.        I told him
what I knew about the tax suit.  








The jury was entitled to believe Bellefeuille’s
testimony that he told Laws about Johnny, Cassandra, and Ruby having lost the
property in a tax sale and disregard Laws= testimony that he did not know the
money he lent Bellefeuille was to for the redemption of this property.  Laws and Bellefeuille had a business
relationship; Bellefeuille worked for Laws as a mortgage broker.  Johnny, Cassandra, and Ruby testified they
did not sell the property to Bellefeuille, but, instead, Bellefeuille
represented to them that he would help them finance the redemption of the
property.  Given the relationship between
Laws and Bellefeuille, the jury could reasonably infer that Laws knew Johnny,
Cassandra, and Ruby had not sold the property to Old West.  This issue is overruled.  

                                                             IV.  Conclusion

The trial court erred in awarding the Baileys $25,000 in
damages on their claim for conversion against Hilal.  Therefore, we reverse that portion of the
judgment and render judgment that Johnny and Cassandra Bailey take nothing on
their conversion claim against Hilal. 
The remainder of the judgment is affirmed.  Accordingly, the trial court=s judgment is affirmed, in part, and
reversed and rendered, in part.  

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Opinion filed October 17, 2002.

Panel consists of
Justices Hudson, Fowler, and Edelman.

Do Not Publish C Tex.
R. App. P. 47.3(b).











[1]  Those taxing
authorities are Houston Independent School District, Harris County, Harris
County Education Department, Port of Houston of Harris County Authority, Harris
County Flood Control District, Harris County Hospital District, City of
Houston, and Houston Community College System. 






[2]  After the
trial, Bellefeuille and Old West Services settled with Johnny, Cassandra, and
Ruby for $40,000, which expressly excluded damages for rental payments and loss
of personal property.  





[3]  The trial
court allowed the Baileys to file a trial amendment adding a cause of action
for conversion.  The limitations period
for a cause of action for conversion is two years.  Tex.
Civ. Prac. & Rem. Code Ann. ' 16.003(a)
(Vernon Supp. 2002); Hofland v. Elgin-Butler Brick Co., 834 S.W.2d 409,
413 (Tex. App.CCorpus Christi 1992, no writ).  The Baileys were evicted on January 23, 1998,
and the trial amendment was filed on September 19, 2000.  Hilal complains he did not have an
opportunity to plead limitations as an affirmative defense.  Hilal, however, does not show where in the
record he attempted to plead statute of limitations or otherwise provide any
argument or authority in support of this complaint.





[4]  The judgment
in the tax suit states, in relevant part: 

And it is
further ORDERED, ADJUDGED and DECREED by the Court that the Clerk of this
Court, if requested by the purchaser, pursuant to Section 33.51 of the Texas
Property Tax Code, issue a writ of possession to the land above
described and ordered sold, as provided for by law, ordering the Sheriff or
proper officers to place the purchaser or purchasers, or their heirs,
executors, administrators and assigns, in possession of the property so
purchased, or any part thereof, at the sale provided for in this judgment.

(Emphasis added).





[5]  The constable=s return states ATHE
LOCKS WERE CHANGED AND THE TENANTS WAS [sic] GIVEN A NOTICE ADVISING
THEM WHERE THEIR PROPERTY WAS TO BE STORED AND HOW TO RECLAIM SAME.@  (Emphasis in
original).





[6]  The trial
court submitted a question to the jury on the issue of actual notice, but not
on the issue of constructive notice. 
Constructive notice is notice the law imputes to a person not having
personal information or knowledge.  Madison,
39 S.W.2d at 606.