**FILE**
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBEER 12, 2024

_González C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 12, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SAMMAMISH, a Washington municipal corporation, | ) ) ) | No. 101894-1 |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| JOHN TITCOMB, JR. and LINDE R. BEHRINGER, husband and wife, and the marital community comprised thereof; and KING COUNTY, | ) ) ) ) ) | Filed: <u>Sepetmber 12, 2024</u> |
| Petitioners. | ) ) ) | |

JOHNSON, J.—This case asks us to determine the scope of the statutory

condemnation authority granted under RCW 8.12.030,[1] and whether a municipality

---

[1] "Every city and town and each unclassified city and town within the state of Washington, is hereby authorized and empowered to condemn land and property, including state, county and school lands and property for streets, avenues, alleys, highways, bridges, approaches, culverts, drains, ditches, public squares, public markets, city and town halls, jails and other public buildings, and for the opening and widening, widening and extending, altering and straightening of any street, avenue, alley or highway, and to damage any land or other property for any such purpose or for the purpose of making changes in the grade of any street, avenue, alley or highway, or for the construction of slopes or retaining walls for cuts and fills upon real property abutting on any street, avenue, alley or highway now ordered to be, or such as shall hereafter be ordered to be, opened, extended, altered, straightened or graded, or for the purpose of draining swamps, marshes,

has authority to condemn private property for stormwater management and fish passage protection. Here, the city of Sammamish (City) passed Ordinance No. O2021-526 (Ordinance) authorizing the condemnation of property rights in the water from George Davis Creek, which runs through petitioners' property. The Ordinance listed the purposes for the condemnation as reducing and eliminating storm drainage conveyance system capacity issues, improving traffic safety, providing flood protection, and removing barriers to fish passage.

Under RCW 8.12.030, cities have the express authority to take property for enumerated purposes after paying just compensation. The petitioners do not dispute this, but they argue that the City had no authority to condemn their property for fish passage purposes, based on language in the salmon recovery act (SRA), ch. 77.85 RCW, and the holding of *Cowlitz County v. Martin*, 142 Wn. App. 860, 866-67, 177 P.3d 102 (2008). The Court of Appeals here recognized that the City does have the authority to condemn private property for stormwater management based on RCW 8.12.030. Review was granted to review the scope of that statutory authority and whether inclusion of other unlisted purposes for a project taints the grant of

---

tidelands, tide flats or ponds, or filling the same, within the limits of such city, and to condemn land or property, or to damage the same, either within or without the limits of such city for public parks, drives and boulevards, hospitals, pesthouses, drains and sewers, garbage crematories and destructors and dumping grounds for the destruction, deposit or burial of dead animals, manure, dung, rubbish, and other offal, and for aqueducts, reservoirs, pumping stations and other structures for conveying into and through such city a supply of fresh water, and for the purpose of protecting such supply of fresh water from pollution, and to condemn land and other property and damage the same for such and for any other public use after just compensation having been first made or paid into court for the owner in the manner prescribed by this chapter."

authority. *City of Sammamish v. Titcomb*, 25 Wn. App. 2d 820, 525 P.3d 973, *review granted*, 1 Wn.3d 1033 (2023). We affirm the Court of Appeals and hold that the City is statutorily authorized to condemn property, pursuant to RCW 8.12.030.

## FACTS AND PROCEDURAL HISTORY

George Davis Creek is located in the city of Sammamish. The creek runs through property owned by John Titcomb Jr. and Linde Behringer and out into Lake Sammamish. In 2018, the City initiated the George Davis Creek Fish Passage Project (Project). The City listed this as a multipurpose project intended to primarily remove a number of fish passage barriers in the creek but also to restore streambed processes and floodplain function in the area.

In 2019, the City applied for and received a grant through the SRA to fund portions of the Project. The City used the grant to pay for design fees. After considering a number of design options, the City determined that the best course of action would be to modify the course of the creek to meet critical requirements of the Project: capacity to convey a 100-year flood event, conformance to Washington State fish passage rules, and federal permitting. The City bought the neighboring property to petitioners in 2020 and decided to reroute the creek across that property to Lake Sammamish. The City extended an offer to Titcomb and Behringer to compensate them for the loss of their water rights in the creek. The petitioners

refused, and negotiations were unsuccessful. The City then initiated condemnation proceedings.

The City proposed Ordinance No. O2021-526. The Ordinance declared the public use and necessity for the acquisition of property interests for the Project, authorizing use of condemnation pursuant to chapter 8.12 RCW. The Ordinance declared that compensation would be paid to the petitioners, and costs and expenses would be paid from the City's stormwater enterprise fund and the general funds of the City. The Ordinance stated that the relocation of the creek would support salmon recovery by providing barrier-free fish passage and improved in-stream fish habitat. The Ordinance also stated that the relocation would "reduce or eliminate storm drainage conveyance system capacity issues, improve traffic safety of adjacent roadways by reducing hazardous flooding conditions, and provide greater flood protection." Clerk's Papers at 56.

In 2021, the city council adopted the Ordinance. The City then filed a petition in superior court to condemn any property rights in the creek that were extinguished by the Project. The City filed a motion for an order adjudicating public use and necessity, asserting that the City had authority to condemn the property rights involved for stormwater facilities, that the Project constituted a public use, and that the condemnation was necessary to accomplish that use. Petitioners opposed the condemnation, arguing that the City had no authority to condemn private property

4

rights for fish passage purposes, based on language in WAC 420-12-090 and RCW 77.85.050, and in *Cowlitz County*. The superior court denied the City's motion and dismissed the condemnation action.

The City appealed, arguing that it had statutory authority to condemn petitioners' property for stormwater purposes and that the condemnation was for public use and necessity. The Court of Appeals agreed and reversed. *Titcomb*, 25 Wn. App. 2d 820. The court held that including fish passage as one of multiple purposes of the Project did not divest the City of authority conferred in RCW 8.12.030. The court also distinguished *Cowlitz County* because in that case condemnation was authorized solely for the purpose of fish passage, whereas here, the Project articulated both fish passage and storm drainage infrastructure as purposes for condemnation. The petitioners appealed and we granted review.[2]

ANALYSIS

Eminent domain is an inherent power of sovereignty, allowing the state government to condemn property for public use. States may delegate this power to political subdivisions, like cities or counties, through express statutory grant. Because local governments are granted condemnation authority by statute, their authority extends only as far as is statutorily authorized. The scope of that

---

[2] Amici curiae briefs were filed by the Washington State Association of Counties, the State of Washington and Native Tribes, and the Sauk-Suiattle Indian Tribe in support of affirming the Court of Appeals.

statutorily granted authority is a question of law that we review de novo. *Pub. Util. Dist. No. 1 of Okanogan County v. State*, 182 Wn.2d 519, 534, 342 P.3d 308 (2015).

Our fundamental objective in interpreting statutes is to ascertain and carry out the legislature's intent. When the statute's meaning is plain on its face, the court gives effect to that plain meaning. The plain meaning is discerned through the language in the statute and related statutes that disclose the legislature's intent. If the statute is still susceptible to more than one reasonable meaning, the statute is ambiguous and the court can utilize other statutory construction aids. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002).

RCW 8.12.030 expressly states that cities and towns may condemn land and property for various types of city infrastructure, such as streets, highways, bridges, "culverts, drains, [and/or] ditches," and "for any other public use." The statute undisputedly allows the City to condemn for stormwater and drainage infrastructure. The creek is listed under the Ordinance as part of the "storm drainage infrastructure" to manage flooding. Sammamish Ordinance O2021-526 (Mar. 2, 2021), at 2. The plain language confers on the City the statutory authority to condemn property for stormwater and flood control purposes listed in the Ordinance.

Petitioners do not dispute that the City can condemn property for stormwater purposes but argue that because RCW 8.12.030 is silent regarding condemnation for

fish passage purposes, the City does not have the condemnation authority required for the taking of the creek. The only real question before us is thus whether the inclusion of fish passage purpose divests the City of its statutory condemnation authority. We conclude that it does not.

Petitioners argue that state law does not authorize condemnation for salmon recovery projects, based on language in the SRA and its rules in chapter 420-12 WAC. RCW 77.85.050(1)(a) states, "No project included on a habitat project list shall be considered mandatory in nature and no private landowner may be forced or coerced into participation in any respect." WAC 410-12-090 states, "All acquisitions must be on a willing-seller basis." However, neither of these speak to the City's condemnation authority nor divest the City of that authority.

While money granted through the SRA cannot be used for condemnation, the City specifically appropriated funding for condemnation of the property from other sources. The SRA money was used for the Project design stage. Further, the SRA does nothing to limit the City's authority to condemn for the Project's legitimate purpose of stormwater management. The SRA cannot be read to limit the authority granted in RCW 8.12.030.

Petitioners also argue that *Cowlitz County* supports their position, and the Court of Appeals should have applied the holding of that case. In that case, the project had a fish passage purpose, and the county added the purpose of stormwater

control for the first time in the petition seeking condemnation. The county asserted that it had condemnation authority based on the SRA, but the Court of Appeals disagreed that the SRA granted such authority. The court concluded that provisions in the SRA requiring the consent of landowners for projects funded by that act indicated that the legislature did not intend to grant any condemnation authority under the SRA. There, the Court of Appeals held "that the Salmon Recovery Act does not authorize counties to condemn private property to further projects undertaken solely under its provisions." *Cowlitz County*, 142 Wn. App. at 868.

The City urges that we adopt the interpretation of *Cowlitz County* that the Court of Appeals in this case outlined, distinguishing the two cases on their facts. The Court of Appeals here determined that because the City had more than one purpose—to eliminate barriers to fish passage *and* replace drainage infrastructure— and the latter purpose was one for which condemnation has been statutorily authorized under RCW 8.12.030, the City had the requisite authority. We agree.

Amici urge us to overrule *Cowlitz County*, arguing it wrongly interpreted the SRA as limiting the condemnation authority of local governments. Amici also argue that we should conclude that fish passage protection is a legitimate public use, falling under the "any other public use" in RCW 8.12.030, sufficient to grant condemnation authority. We need not, given the legitimate purpose of stormwater infrastructure management, reach that argument in this case. We agree here with the Court of

Appeals that the Project's fish passage purpose does not divest the City of its authority to condemn property for stormwater management purposes.

We note that the list of potential condemnation projects in RCW 8.12.030 does not purport to be exclusive. Property may be condemned for a public use that is similar to the other types of nonexclusive public uses listed in RCW 8.12.030. The combination of stormwater or flood management and fish passage together fit within the expressly granted authority to condemn for purposes of waterway infrastructure management. We need not determine the full extent of possible "other public use" here, because legitimate expressly listed purposes were provided. While the State has broad condemnation authority, the statute delegates to cities and towns only a narrower grant of authority which we decline to read broadly. However, to the extent that *Cowlitz County* suggests that including a fish passage purpose along with other legitimate purposes taints the exercise of legitimate condemnation authority, we disavow that reading.

CONCLUSION

We affirm the Court of Appeals and remand to the trial court for further proceedings.

9

Johnson, J.

WE CONCUR:

Madsen, J.

Stephens, J.

Whitener, J.

Lawrence-Berrey, J.P.T.

No. 101894-1

MONTOYA-LEWIS, J. (concurring)—I agree with the majority's decision to affirm the Court of Appeals and hold that the city of Sammamish is statutorily authorized to condemn property for a multipurpose project involving stormwater management and eliminating barriers to fish passage pursuant to RCW 8.12.030. However, I disagree with the majority that we must decide this case on the narrowest grounds and need not address fish passage as a public use. I would go further and conclude that fish passage is a stand-alone "public use" within the meaning of RCW 8.12.030 and expressly overrule *Cowlitz County v. Martin*, 142 Wn. App. 860, 177 P.3d 102 (2008). This case raises *Cowlitz County* squarely, and that case is incorrect; we should address that and say so.

Though the right to take fish was expressly promised by the federal government through treaties nearly 170 years ago, it took a federal court decision 50 years ago to affirm Native peoples' right to fish. *See United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974);[1] *see also* Treaties, *infra*. That decision "was

---

[1] The 1974 *United States v. Washington* decision is commonly known as the "*Boldt* decision" and will be cited throughout the concurrence as *Boldt*.

1

the result of sacrifices made by Native fishers and their families jailed and beaten while defending these rights." Lynda V. Mapes, *How the Boldt Decision 50 Years Ago Remade Pacific Northwest Fishing*, SEATTLE TIMES (Jan. 14, 2024, 6:00 AM).[2] Yet even recently, these fishing rights have continued to be violated by barriers to fish passage, which has again required intervention by the federal court. *See United States v. Washington*, 853 F.3d 946, 954, 966 (9th Cir. 2017), *aff'd*, 584 U.S. 837, 138 S. Ct. 1832, 201 L. Ed. 2d 200 (2018) (per curiam). While this case turns on the meaning of RCW 8.12.030, I would interpret this statute by including an understanding of the historical and cultural backdrop that informs the management of projects like the one at issue in this case.

Amici, the State of Washington and 13 tribes—the Hoh Indian Tribe, Jamestown S'Klallam Tribe, Lower Elwha Klallam Tribe, Lummi Nation, Muckleshoot Indian Tribe, Nisqually Indian Tribe, Nooksack Indian Tribe, Port Gamble S'Klallam Tribe, Puyallup Tribe, Stillaguamish Tribe, Swinomish Indian Tribal Community, Tulalip Tribes, and the Sauk-Suiattle Indian Tribe—ask us to "say the quiet part out loud," that fish passage itself is a "public use" within the meaning of RCW 8.12.030, which is why the City deemed it important enough to undertake this multiyear project. Br. of Amicus Curiae Sauk-Suiattle Indian Tribe

---

[2]https://www.seattletimes.com/seattle-news/environment/how-the-boldt-decision-50-years-ago-remade-pacific-northwest-fishing/ [https://perma.cc/45BT-DFWE].

in Supp. of Affirmance at 5-9; Br. of Amici Curiae of the State of Washington and the Hoh Indian Tribe, Jamestown S'Klallam Tribe, Lower Elwha Klallam Tribe, Lummi Nation, Muckleshoot Indian Tribe, Nisqually Indian Tribe, Nooksack Indian Tribe, Port Gamble S'Klallam Tribe, Puyallup Tribe, Stillaguamish Tribe, Swinomish Indian Tribal Community, and Tulalip Tribes (State of Wash. & Hoh Indian Tribe, et al.) at 5-16. In my view, if we granted permission for amici to file briefs and a multitude of tribes did so, we should seriously consider the arguments presented, even where, as the majority view indicates, the parties to this matter chose not to raise them. *See In re Dependency of D.L.B.*, 186 Wn.2d 103, 123 n.14, 376 P.3d 1099 (2016) (though appellate courts ordinarily do not address issues raised only by amici, we have discretion to do so and will address those issues on the merits when "th[e] argument is thoroughly briefed, the record is sufficiently developed, and there is no disagreement among the parties as to the legal principles involved," as here). In this case, and others where we have permitted amicus briefing, the amici raise crucial issues that demonstrate the importance of taking a broader approach to the questions presented. If we determine that decisions about cases can be made only on the narrow grounds raised by the parties, we miss opportunities like what is presented here to look at the critical consequences of our decisions (and, in this case, the Court of Appeals' decision in *Cowlitz County*). Here, the amici show the importance of this case as it applies to the rights preserved to them by treaties. By

3

failing to address these arguments, we turn away from important foundational questions about the preservation of guaranteed treaty fishing rights that are not superfluous to this case but, rather, are underlying the actions of the City. Therefore, I would affirm the wisdom of the original stewards of this land as it relates to the public use of protecting salmon and recognize that the City's condemnation authority extends to that.

We should find that fish passage is a "public use" under RCW 8.12.030 for three main reasons. First, preserving fish passage is similar to other public uses enumerated in the statute. Second, the federal government made promises to tribes to protect salmon and preserve fish passage through treaties, and recognizing fish passage as a public use maintains consistency with those promises. Third, a multitude of state statutes and regulations requiring the protection of fish demonstrate that the legislature has repeatedly recognized fish as an integral piece of the history and vitality of Washington State.

First, as the majority notes, the list of potential condemnation projects in RCW 8.12.030 does not purport to be exclusive. Majority at 9. Indeed, the statute explicitly authorizes a city to condemn property

> *including* . . . property for streets, avenues, alleys, highways, bridges, approaches, culverts, drains, ditches . . . and for aqueducts, reservoirs, pumping stations and other structures for conveying into and through such city a supply of fresh water, and for the purpose of *protecting such supply of fresh water* from pollution . . . and for *any other public use*

after just compensation having been first made.

RCW 8.12.030 (emphasis added). Property may be condemned for a public use that is similar to the other types of nonexclusive public uses listed in RCW 8.12.030. *In re Pet. of City of Seattle*, 96 Wn.2d 616, 633, 638 P.2d 549 (1981) ("the general language of RCW 8.12.030—'for any other public use'—is restricted to uses which are of the same kind as those enumerated in the section or which are specifically authorized by the legislature").

Fish passage is similar to the long list of public uses enumerated in the statute. The statute authorizes condemnation for culverts—precisely the infrastructure for which this condemnation is taking place. Moreover, similar to many of the public uses that are listed for the purpose of protecting water, eliminating barriers to fish passage also serves the purpose of protecting water and its inhabitants. Namely, aqueducts, reservoirs, pumping stations and other structures conveying fresh water into and through a city are enumerated public uses because they serve the purpose of protecting water from pollution. Water quality issues, such as pollution, can negatively affect fish health, survival, and passage. Likewise, placing culverts in streams can create physical barriers to fish, thereby negatively affecting their health, habitat, and ability to migrate and spawn. The enumerated purpose of protecting water is meaningless if the water's inhabitants are not also protected.

Second, improving fish passage should qualify as a public use because the

United States made commitments to tribes through federal treaties, which are the supreme law of the land, U.S. CONST. art. VI, and those commitments include protecting salmon which requires the preservation of fish passage. In the mid-1800s, the United States authorized Isaac Stevens, the first governor and superintendent of Indian Affairs of the Washington Territory, to negotiate treaties with tribal nations and persuade them to relinquish their lands to the federal government and move onto reservations. *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 664-66, 99 S. Ct. 3055, 61 L. Ed. 2d 823 (1979); *see also* Ctr. for Study of Pac. Nw., *A History of Treaty Making and Reservations in the Olympic Peninsula*, UNIV. OF WASH.[3] There is no evidence that Native peoples understood any of the English terms and phrases used in the treaties. *Fishing Vessel*, 443 U.S. at 666-67. But the significance of fish to Native peoples is beyond doubt.

> It is perfectly clear, however, that the Indians were vitally interested in protecting their right to take fish at usual and accustomed places, whether on or off the reservations, and that they were invited by the white negotiators to rely and in fact did rely heavily on the good faith of the United States to protect that right.

*Id.* at 667 (citation omitted) (citing *Boldt*, 384 F. Supp. at 355). Stevens ultimately negotiated eight treaties with tribes in what would become Washington, each of which contained a fishing clause guaranteeing the "right of taking fish at all usual

---

[3]https://www.washington.edu/uwired/outreach/cspn/Website/Classroom%20Materials/Curriculum%20Packets/Treaties%20&%20Reservations/III.html [https://perma.cc/H8DU-FGBX].

and accustomed grounds and stations." Treaty of Olympia, Jan. 25, 1856, 12 Stat. 971 (signatory tribes included Hoh, Quileute, and Quinault Tribes); *see also* Treaty with the Nez Perces, Nez Perce Tribe-U.S., June 11, 1855, 12 Stat. 957; Treaty with the Yakamas, Confederated Tribes and Bands of the Yakama Nation-U.S., June 9, 1855, 12 Stat. 951; Treaty with the Walla Wallas, June 9, 1855, 12 Stat. 945 (signatory tribes included Cayuse, Umatilla, Walla Walla, and Tribes and Bands); Treaty of Neah Bay, Makah Tribe-U.S., Jan. 31, 1855, 12 Stat. 939; Treaty of Point No Point, Jan. 26, 1855, 12 Stat. 933 (signatory tribes included Jamestown S'Klallam, Lower Elwha Klallam, Port Gamble S'Klallam, and Skokomish Tribes); Treaty of Point Elliot, Jan. 22, 1855, 12 Stat. 927 (signatory tribes included Lummi Nation, Muckleshoot, Nooksack, Sauk-Suiattle, Stillaguamish, Suquamish, Swinomish, Tulalip, and Upper Skagit Tribes); Treaty of Medicine Creek, Dec. 26, 1854, 10 Stat. 1132 (signatory tribes included Muckleshoot, Nisqually, Puyallup, and Squaxin Island Tribes).[4]  In order for these treaties to have meaning then and now, they must be animated by the actions we take to preserve the resources promised.

"Tribal access to an 'adequate supply of salmon was not much less necessary to the existence of the Indians than the atmosphere they breathed.'"  Br. of Amici

---

[4] The lists of signatory tribes are not intended to be exhaustive, as indicated in some of the treaties themselves.  Rather, this demonstrates the broad intent of the treaties to protect the natural resources like the salmon fishery for the benefit of tribes.

Curiae State of Wash. & Hoh Indian Tribe, et al. at 14 (internal quotation marks omitted) (quoting *Washington*, 853 F.3d at 964). The right to take fish "was intended to be continuing against the United States and its grantees as well as against the State and its grantees." *United States v. Winans*, 198 U.S. 371, 381-82, 25 S. Ct. 662, 49 L. Ed. 1089 (1905). Litigation continuing to establish these rights persists to this day.

Recently, the United States, on behalf of Treaty Tribes, obtained an injunction against the State of Washington for violating the fishing clause in the abovementioned treaties by building and maintaining barrier culverts that prevented salmon from returning to their spawning grounds and moving freely to seek food and escape predators. *Washington*, 853 F.3d at 954. The Ninth Circuit affirmed the injunction, finding that the State violated its obligations to Treaty Tribes when building and maintaining barrier culverts on relevant state waters. *Id.* at 966. Recognizing fish passage as a public use in this case would put us in harmony with *Washington*, and more importantly, maintain consistency with the promises set out in treaties by the United States to the Indigenous people of this land. These are not side issues to this case. In my view, they are foundational.

Third, the public use of protecting, preserving, and restoring fish passage is supported by decades of statutes and regulations requiring fish protection, which demonstrate how fish are essential to the history, culture, environment, economy,

8

and recreational enjoyment in Washington. For instance, under RCW 77.04.012, the legislature has declared fish as state property and required the Washington Department of Fish and Wildlife to "preserve, protect, perpetuate, and manage the wildlife and food fish, game fish, and shellfish in state waters and offshore waters." *See also Judd v. Bernard*, 49 Wn.2d 619, 622, 304 P.2d 1046 (1956) (acknowledging that fish in state waters belong to the state pursuant to statute and court decision). Washington hydraulic laws and regulations also require the department to regulate construction projects affecting state waters to minimize effects to fish and fish habitat. *See* RCW 77.55.021(1) (requiring any person or government agency planning to undertake a hydraulic project to obtain a permit "for the protection of fish life"), (2)(c) (requiring any person or government agency planning to undertake a hydraulic project to submit an application for a permit with "[c]omplete plans and specifications for the proper protection of fish life"); *see also* WAC 220-660-190(2)(a) ("A person must design water crossing structures in fish-bearing streams to allow fish to move freely through them."). Similarly, under RCW 77.57.030(1), the legislature requires anyone building a dam or other obstruction across or in state waters to provide "a durable and efficient fishway" to enable the "water to freely pass fish."

The legislature also created several state agencies responsible for protecting fish life, habitat, and water quality. *See, e.g.*, RCW 77.85.030 (Governor's Salmon

9

Recovery Office responsible for maintaining statewide salmon recovery strategy and working toward recovery in collaboration with private, local, regional, state, and federal entities); RCW 90.71.200(2), .300 (Puget Sound Partnership tasked with restoring Puget Sound waters to ensure a healthy ecosystem and robust food web, including fish); RCW 90.48.010 (Department of Ecology oversees water pollution laws with a purpose of maintaining "the highest possible standards to insure the purity of all waters of the state consistent with . . . the propagation and protection of . . . fish").

We should read the multitude of laws dedicated to the protection of fish health and habitat in harmony with RCW 8.12.030. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002) (in determining legislative intent, the court may consider related statutes). The legislature has repeatedly expressed its intent to protect fish, and recognizing that fish passage is a public use for condemnation purposes is consistent with that intent.

Thus, I would find that fish passage is a public use as it is similar to other enumerated public uses in RCW 8.12.030, and such a finding gives meaning to federal treaties promising tribes the right to take fish, case law that further supports and develops this treaty right, as well as state statutes and regulations requiring the protection of fish.

Last, I agree with the parties and amici that the instant case squarely raises the

*Cowlitz County* decision as it relates to condemnation power for projects involving fish passage, and I would reach and expressly overrule that decision. I do not foresee another case coming to us that would give us the opportunity to address the *Cowlitz County* case as precisely as the instant case and not doing so creates confusion. The majority briefly discusses *Cowlitz County* and distinguishes the case on its facts, majority at 8, but in my view, for all of the abovementioned reasons, the Court of Appeals in that case was wrong in holding that fish passage alone cannot support condemnation authority under RCW 8.12.030. 142 Wn. App. at 868. Moreover, the holding of *Cowlitz County* is inconsistent with the plain language of the salmon recovery act, ch. 77.85 RCW. By simply distinguishing this case, rather than expressly overruling it, the majority seems to uphold the *Cowlitz* approach through what is effectively inaction. The *Cowlitz* case is wrong, and we should say so.

Namely, the *Cowlitz County* decision conflates the salmon recovery act's restrictions on the use of grant funds with statutes defining and limiting a city's condemnation authority. *See* 142 Wn. App. at 866-67 ("the Salmon Recovery Act strictly forbids condemnation for projects undertaken solely under its provisions"). The two are distinct. The salmon recovery act authorizes municipalities to apply for state funds for salmon passage improvements designated in a habitat project list. RCW 77.85.050, .150, .170. The legislature has tasked local governments and tribes with collaborating to designate the lead entity responsible for submitting a habitat

11

project list. RCW 77.85.050(1)(a). The legislature further provides that "[n]o project included on a habitat project list shall be considered mandatory in nature and no private landowner may be forced or coerced into participation in any respect." *Id. Cowlitz County* misconstrued this sentence in the statute as precluding local governments from exercising condemnation authority for fish habitat projects.

The *Cowlitz County* court misread the purpose of the salmon recovery act, which addresses funding for such projects. No part of the salmon recovery act addresses the authority of local governments to exercise condemnation power, and there is no reference to or restriction on the general statutory condemnation authority set out in RCW chapters 8.08 (counties) and 8.12 (cities). RCW 77.85.050(1)(a) plainly states the legislature's intent that state-funded grants should not be provided where a private landowner's participation in a habitat project is forced or coerced, but this language neither defines nor restricts a local government's condemnation authority. The statute is merely a *funding* restriction—not a restriction on a local government's *condemnation authority*. *See* RCW 77.85.050(3) (requiring lead entity to "submit the habitat project list to the salmon recovery *funding* board" (emphasis added)); (4) (requiring the recreation and conservation office to "administer *funding* to support the functions of lead entities" (emphasis added)); *see also In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000) (we presume the legislature "'used no superfluous words and we must accord meaning,

if possible, to every word in a statute"' (quoting *Greenwood v. Dep't of Motor Vehicles*, 13 Wn. App. 624, 628, 536 P.2d 644 (1975))).

In addition, statutes involving land acquisition that place any restrictions on a local government's eminent domain powers tend to do so explicitly. *See, e.g.*, RCW 84.34.220 (local governments have authority to "purchase or otherwise acquire, *except by eminent domain*, rights in perpetuity to future development of any open space land, farm and agricultural land, and timberland" (emphasis added)); RCW 79.70.030(3) (Department of Natural Resources has authority to "acquire by gift, devise, purchase, grant, dedication, or means *other than eminent domain*, the fee or any lesser right or interest in real property which shall be held and managed as a natural area" (emphasis added)); RCW 35.84.030 (no city or town has authority to "acquire, by purchase or *condemnation*" any electric system or plant located in another city or town without certain approval, or owned or operated by certain types of organizations (emphasis added)). Reading the plain text and ordinary meaning of the salmon recovery act, ch. 77.85 RCW, there are no restrictions on the authority of local governments to exercise condemnation authority. In the act, there is not a single reference to the statutes granting local governments such authority, ch. 8.08 RCW (counties), ch. 8.12 RCW (cities). The salmon recovery act places some limits on the funding available for its projects but does not evince any legislative intent to restrain local governments' broad eminent domain powers.

13

In sum, I depart from the majority in that I would expressly overrule the decision in *Cowlitz County* and find that eliminating barriers to fish passage is an independently sufficient public use for condemnation under RCW 8.12.030. In failing to do so, we choose today to ignore the important treaty rights raised in this case and fail to ensure we act in concert with those treaties by protecting the rights to fish in the usual and accustomed places enumerated in the treaties. We also fail to harmonize the relevant state statutes that seek to do the same.

I respectfully concur.

_____
Montoya-Lewis, J.

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Yu, J.